[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-12083
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 4, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00203-CV-BAE-4

CLAUDIA BENNETT,

Plaintiff-Appellant,

versus

CHATHAM COUNTY SHERIFF DEPARTMENT,
THOMAS GILBERG,
individually and in his official
capacity as a sheriff captain,
ROBERT LAMB,
individually and in his official
capacity as a sheriff lieutenant,
ROBERT BROOKS,
individually and in his official
capacity as a sheriff sergeant,
E. SALMON,
individually and in his official
capacity as a sheriff lieutenant, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

**(November 4, 2008)**

Before TJOFLAT, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Claudia Bennett appeals the district court's grant of summary judgment in favor of her employer, defendant Chatham County Sheriff's Department ("CCSD"), and various defendant CCSD employees on her race and gender discrimination and retaliation claims brought under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a), 3(a). After review, we affirm.

## I. BACKGROUND

### A. Inmate Altercation

Bennett, a black woman, works for CCSD as a corrections officer at the Chatham County Jail. In August 2004, Bennett purchased a Dell computer for personal use that was charged mistakenly to Chatham County. After an investigation, on March 23, 2005, Bennett was suspended for three days without pay for failing to correct the error.

On November 16, 2005, Bennett was disciplined for her actions in an inmate altercation. On September 12, 2005, Bennett encountered inmate Mark Prestonback, who was not following Bennett's orders to return to his cell. When it appeared to Bennett that Prestonback was ready to fight, she called for emergency assistance. Private Glen Williams and Officer Tony Farmer responded. When Williams attempted to restrain Prestonback, an altercation ensued. Bennett and Farmer joined the scuffle, and eventually Prestonback was placed in restraints.

During the altercation, Bennett injured her ankle. On September 21, 2005, Bennett advised her shift commander that she had a medical appointment to treat her ankle and would arrive late to work. Sergeant Robert Brooks issued Bennett a counseling memorandum advising Bennett that she should have notified her supervisors in advance before taking non-emergency leave. On September 23, 2005, Bennett filed a grievance alleging she received the counseling memorandum because she was a black woman.

B.     Internal Investigation

Meanwhile, CCSD investigated the altercation with Prestonback and collected statements from the participants. Bennett was asked four times to write an incident report, which she did. Williams was asked twice to write an incident report. Corporal Dixie Barbour also interviewed several inmates, who stated that,

3

during the incident, Bennett called Prestonback names and hit him in the groin.

After completing the investigation, Captain Thomas Gilberg prepared a report dated October 5, 2005. The report found that Bennett had started a verbal confrontation with Prestonback by calling him a "faggot and a retard," taunting Prestonback to hit her in the mouth, and stating loudly "only cowards act like that, he had his chance to hit me in the face and he did nothing." The report noted that Bennett initially denied making the statements to Prestonback, but later admitted she called Prestonback a coward within hearing range of other inmates.

The report found that, when Williams responded to Bennett's call for help, Prestonback hit Williams in the head and tried to grab Williams's groin. Williams responded by hitting Prestonback in the head several times. The report found plausible Williams's claims that he did not know other officers had arrived to help when he hit Prestonback. The report also found that Bennett kicked Prestonback in the groin area and that no report corroborated her claim that she assisted in restraining Prestonback. When Corporal Milton ordered Williams to back off, Williams struck Prestonback again, although it was unclear whether Williams had heard the order.

The report concluded that Williams was acting to assist a fellow officer, but had showed poor judgment by approaching Prestonback while he was aggravated.

4

The report indicated that Williams cooperated with the investigation and admitted he lost control and struck Prestonback in an unauthorized manner. Gilberg recommended a Personal Conduct Report ("PCR") be prepared and stand as a letter of reprimand in Williams's file for one year.

The report concluded that Bennett acted in an unprofessional manner and taunted Prestonback, provoking him to leave his cell; failed to warn responding officers about the highly volatile situation; allowed Williams and Farmer to confront Prestonback without assisting them; hit Prestonback after he was restrained and she knew he was no longer a threat; and stopped only when instructed to do so by a superior. The report concluded that Bennett had yet to give a full and truthful accounting even though three different superiors instructed her to write a full incident report. The report noted that Bennett cooperated reluctantly with the investigation and denied hitting Prestonback or making the statement that Prestonback had the chance to hit her, despite contrary evidence. Gilberg recommended a letter of reprimand and a one-week suspension.

Attached to the report were incident reports by the officers involved in subduing Prestonback and a summary of interviews with Prestonback and the other inmates who witnessed the altercation. Lieutenant E. Salmon, the watch commander, indicated in his incident report that, when he arrived on the scene with

5

a taser, Prestonback appeared "about restrained" and he observed Williams and Bennett hitting Prestonback. Lieutenant Salmon ordered Williams and Bennett to "back off." Several inmates indicated that Bennett called Prestonback names and that both Bennett and Williams hit Prestonback after he was restrained. Bennett's incident reports did not say she called Prestonback names and taunted him to hit her or kicked him in the groin after he was restrained. In her third and fourth incident reports, Bennett did recall stating to herself that "only cowards and faggots acts [sic] like that."

## C. Discipline

As a result of the incident, on October 20, 2005, Bennett was issued a PCR and a Statement of Charges charging her with violating Sheriff's Department policies on general conduct, use of force and reporting incidents. Assistant Jail Administrator Howard Harn suspended Bennett without pay for one week, and his disciplinary decision was upheld by Colonel McArthur Holmes, the Jail Administrator. Harn explained that the evidence showed that Bennett "had made unprofessional and unnecessary comments to an inmate . . . thereby precipitating an incident in which the inmate attacked, struck and injured another officer," that she "was using excessive, unnecessary and unauthorized force which was not for the intent of restraining the inmate," and "had failed to be completely truthful and

6

accept responsibility for her actions."

Williams, a black male, also was issued a PCR documenting violations of Sheriff's Department policies on general conduct and use of force. Williams's PCR was placed in his personnel file permanently as a written reprimand. Harn explained that "Private Williams' behavior [in using excessive force] was not excused but was understandable because he was trying to restrain the inmate and the inmate had physically attacked him" and that Williams "was truthful about the incident."

On December 6, 2005, Bennett filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging claims of race and sex discrimination and retaliation and citing her suspension for the Prestonback altercation and the counseling memorandum for failing to provide advance notice of her doctor's appointment. Bennett received her right to sue letter on May 15, 2006 and filed this action on August 14, 2006.

### D. Corporal Promotions

On January 4, 2007, while this action was pending, Bennett filed a second EEOC charge, which she designated an "amended charge," that alleged sex and race discrimination and retaliation based on the denial of a promotion to corporal in February 2006 and October 2006.

Bennett has worked for CCSD since 1992 and holds the rank of advanced private. In March 2005, Bennett passed the corporal examination, which made her eligible for promotion to corporal. In Bennett's 2003-2004 annual evaluation, her immediate supervisor, Lieutenant Simms, stated that Bennett "should push toward next position as corporal."

CCSD's human resources department maintains a list of eligible candidates for promotion. When a vacancy occurs, the Jail Administrator, Assistant Jail Administrator and CCSD's majors and captains meet to discuss the candidates and review their evaluations, disciplinary actions, attendance, special commendations, time in grade, supervisory ability, professional knowledge and quality of work performance. They make recommendations to the Jail Administrator, who in turn makes a recommendation to the Sheriff.

Between October 2005 and September 2006, CCSD filled eight corporal positions. Bennett was eligible and considered for each vacancy, but was not selected. As will be discussed, the first two promotions, Darren Sheppard on October 16, 2005, and James Strickland on February 6, 2006, are time-barred. For the remaining six promotions, according to Captain Gilberg, the Captain of Security at the jail and Bennett's ultimate supervisor, other candidates were promoted over Bennett for the following reasons.

8

On July 23, 2006, Sammy Caruthers, a black male, was promoted because of his attendance history, lack of disciplinary actions, and selection as officer of the month and officer of the year.  On September 17, 2006, five corporal positions were filled.  Teffanie Lowe, a black female, was promoted because of her excellent attendance history, lack of disciplinary actions, selection as officer of the month and officer of the year, recommendation to receive a commendation for discovering a loaded weapon on an arrestee and infrequent use of sick leave (no sick hours in 2005 and 16 sick hours in 2006).  Brett Parker, a white male, was promoted because of his attendance history, lack of disciplinary actions, his field training officer experience, extensive experience in the sheriff's department operations,  state certification as a trainer in several areas and selection as officer of the month and officer of the year.  Tyrone Warren, a black male, was promoted because of his attendance history, lack of disciplinary actions, volunteering whenever the jail was short staffed, self-motivation and selection as officer of the month.  Rick Fisher, a black male, was promoted because of his attendance history, lack of disciplinary actions, selection as officer of the month and experience serving as acting corporal.  Glenn Moye, a black male, was promoted because of his excellent attendance history, selection as officer of the month, lack of disciplinary actions, proficiency in security practices at the jail and infrequent use

9

of sick leave (24 hours of sick leave in 2004, no sick leave in 2005 and 16 hours of sick leave in 2006).

Gilberg stated that Bennett was not promoted to any of these corporal positions because she: (1) had disciplinary actions in her file and suspensions for the Dell computer and Prestonback incidents; (2) had a counseling memorandum for failure to request in advance leave for known doctor's appointments; (3) had no experience as a field training officer and was never selected for officer of the month or officer of the year; (4) took 76 sick hours in 2004, 196 sick hours in 2005, and 94 in 2006; (5) did not volunteer to take on tasks or motivate others; and (6) had not served as acting corporal when the corporal was out.

**E.     Complaint**

Bennett filed this action against CCSD, Captains Gilberg and Robert Lamb, Sergeant Brooks, Lieutenant Salmon, Major Harn, Colonel Holmes and Sheriff Al St. Lawrence, in their individual and official capacities, pursuant to Title VII and § 1983.  Bennett's complaint alleged, inter alia, that (1) Bennett's one-week suspension for the Prestonback altercation was race and gender discrimination and retaliation for the discrimination grievance she filed after she was counseled for failing to give advance notice of her doctor's appointment; and (2) the failure to promote her to corporal was gender and race discrimination and retaliation for her

discrimination grievance.

## F.  Motion for Summary Judgment

Defendants moved for summary judgment on all of Bennett's claims.  The

magistrate judge's report ("R&R") recommended dismissing Bennett's: (1) Title

VII individual capacity claims as improper; (2) § 1983 individual capacity

damages claims as barred by the Eleventh Amendment; and (3) Title VII failure-to-

promote discrimination claim as unexhausted.  The R&R also recommended

granting summary judgment for the defendants on Bennett's: (1) Title VII failure-

to-promote retaliation claim and § 1983 failure-to-promote discrimination claim

because she failed to show CCSD's nondiscriminatory reasons for its promotion

decisions were pretextual; (2) Title VII and § 1983 discipline discrimination claims

because she failed to present evidence of a similarly situated employee who was

treated more favorably; and (3) Title VII discipline retaliation claim because she

failed to show that CCSD's nondiscriminatory reason for imposing a one-week

suspension was pretextual.[1]

On February 13, 2008, the magistrate judge filed an order directing service

_____

[1]Bennett's complaint also identified as discriminatory conduct the written counseling she received after her doctor's appointment and the three-day suspension relating to the Dell computer. In addition, although not explicitly alleged in her complaint, Bennett argued a First Amendment retaliation claim in the district court.  Bennett does not advance these claims on appeal, and we do not address them.

11

of the R&R and warning that the failure to file timely objections could result in the district court adopting the R&R and a waiver of the right to appeal. The record contains no evidence that the R&R was served or a notice of electronic filing. Bennett did not file objections to the R&R.

On March 5, 2008, the district court adopted the R&R and granted summary judgment to defendants. The district court stated that it had conducted "a careful de novo review of the record." The docket indicates this order was emailed to Bennett's attorney of record.

On March 17, 2008, Bennett filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b). Bennett pointed out that the district court recently had entered a standing order for mandatory electronic filing and explained that her attorney had not received his login information from the clerk until March 17, 2008, after he called to report that he had not received a copy of the R&R or the district court's summary judgment order. The district court denied the Rule 60(b) motion, concluding that Bennet had not shown she had been prejudiced by the error. Bennett filed this appeal.

## II. DISCUSSION

On appeal, Bennett challenges the district court's entry of summary judgment on her Title VII and § 1983 discrimination claims and her Title VII

retaliation claims.[2] Where, as here, a plaintiff relies on circumstantial evidence of discrimination, we evaluate whether summary judgment is appropriate using the McDonnell Douglas framework.[3] Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1997). Under McDonnell Douglas, the plaintiff must first establish a prima facie case. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). If the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions and then to the plaintiff to present evidence that the employer's reason is pretext for discrimination. Id. at 1272-73. To show pretext, the plaintiff must show that the employer's reason is both false "and that discrimination was the real reason" for the decision. Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006).

A.    **Discrimination Claims for Bennett's One-week Suspension**

To establish a prima facie case of race or sex discrimination, the plaintiff must present evidence that: (1) she belongs to a protected class; (2) she was

---

[2]"We review the district court's grant of summary judgment de novo, viewing the record and drawing all inferences in favor of the non-moving party." Fisher v. State Mut. Ins. Co., 290 F.3d 1256, 1259-60 (11th Cir. 2002). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party moving for summary judgment has the burden of showing that there is no genuine issue of fact." Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990) (quotation marks omitted).

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).

13

subjected to an adverse job action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (Title VII); see also Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (§ 1983).[4] When the disparate treatment at issue is discipline for the violation of work rules, the "plaintiff . . . must show either (a) that [s]he did not violate the work rule, or (b) that [s]he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against h[er] were more severe than those enforced against the other persons who engaged in similar misconduct." Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions . . . ." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

As evidence of a similarly situated comparator, Bennett points to Williams,

---

[4]On appeal, Bennett briefly identifies for the first time additional incidents she claims violated equal protection principles, including: (1) the additional incident reports she was required to prepare on the Prestonback altercation; (2) an allegation that Captain Gilberg attempted to influence Farmer to testify falsely; and (3) false statements in Captain Gilberg's report. We decline to address these new claims. See McGinnis v. Ingram Equip. Co., 918 F.2d 1491, 1495 (11th Cir. 1990) (explaining that we do not consider issues not presented to the district court). On appeal Bennett does not challenge the district court's rulings that: (1) the defendants in their official capacities are entitled to Eleventh Amendment immunity; and (2) Bennett's Title VII claims against the defendants in their individual capacities are not cognizable. We do not address these issues either.

who received only a written reprimand in his personnel file after the Prestonback altercation. However, Williams's misconduct was not sufficiently similar in quality or quantity for him to constitute a similarly situated employee. Although the investigation found that both Bennett and Williams used unnecessary force on Prestonback and engaged in unprofessional conduct, the circumstances surrounding their misconduct differed. Williams struck Prestonback only after Prestonback attacked him and Williams was in the process of trying to restrain Prestonback. It also was unclear whether Williams knew other officers had arrived or had heard the order to stop. Bennett, on the other hand, provoked the incident by calling Prestonback names and taunting him in front of other inmates. Instead of warning Williams of the seriousness of the situation when he responded to her call for help, Bennett allowed Williams to approach an enraged Prestonback and assisted only after Prestonback had attacked Williams.

Furthermore, Bennett also was charged with failing to report the incident properly. Bennett reluctantly cooperated with the investigation and investigators found her unwilling to accept responsibility for her actions. In contrast, Williams cooperated with the investigation and readily admitted to his unprofessional conduct and unnecessary use of force. Thus, Bennett and Williams were not nearly identical in all relevant aspects of their behavior during the incident, and Williams

15

was not a sufficient comparator for Bennett. Accordingly, the district court did not err in concluding that Bennett failed to establish a prima facie case of discrimination and in granting summary judgment to defendants on these claims.

**B.     Title VII Retaliation Claim for One-week Suspension**

The district court assumed Bennett established a prima facie case of retaliation, but concluded she did not present evidence that CCSD's legitimate nonretaliatory reasons for suspending her were pretext.

To demonstrate pretext, a plaintiff must show that the employer's offered reason was not the true reason for its decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation marks omitted). Furthermore, the plaintiff must "produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." Chapman v. AI Transport, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc) (emphasis added).

Harn suspended Bennett based on the findings of an internal investigation that Bennett: (1) made unprofessional comments to Prestonback that provoked the incident; (2) used excessive, unnecessary and unauthorized force against

16

Prestonback; and (3) was unforthcoming in her incident reports during the investigation, which reflected an unwillingness to accept responsibility for her actions. As evidence that these reasons are pretext, Bennett points to Williams, who was not suspended. For the reasons already discussed, Williams's misconduct differed materially from Bennett's misconduct, and his different disciplinary treatment does not support a reasonable inference of pretext.

Bennett also disputes the underlying facts that she hit Prestonback after he was restrained and that her incident reports were not truthful.[5] However, in investigating misconduct and reaching an employment decision, an employer is entitled to weigh the witnesses's credibility, and we will not "second-guess as a kind of super-personnel department" the employer's decisions made as part of an internal investigation. EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000). In such circumstances, our inquiry is limited to whether the employer's "choice is an honest choice," that is, whether the employer acted in good faith and had reasonable grounds to believe that the disciplined employee engaged in the misconduct. See id.; see also Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under

_____

[5]Bennett relies upon deposition testimony of Williams and Lt. Salmon, which she claims contradicted their incident reports given during the internal investigation, to suggest that she may be innocent of the misconduct.

17

the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

Bennett did not offer any evidence from which a jury could conclude that Harn's decision to suspend her for a week was made in bad faith or was actually motivated by a desire to retaliate. Gilberg's report, along with the attached incident reports and witness interview summaries, provided reasonable grounds to believe that Bennett had engaged in the charged misconduct. Thus, Bennett's claim that she was innocent of the misconduct does not support a finding of pretext.

Bennett stresses her 2005 evaluation did not mention the Prestonback incident. That 2005 evaluation, however, covered the period between August 2004 and August 2005, and the Prestonback incident did not occur until September 2005. Bennett's 2006 evaluation, covering the period from August 2005 to August 2006, did not explicitly mention the Prestonback incident, but did note that she needed to improve her communication with detainees. Furthermore, Bennett's personnel file contained Gilberg's report and the PCR, which both described the Prestonback incident. Thus, Bennett's annual evaluations are insufficient to support an inference of pretext.

Therefore, the district court properly entered summary judgment on

18

Bennett's Title VII retaliation claim for her one-week suspension.

**C.    Title VII Claim of Discriminatory Failure to Promote**

Bennett challenges the district court's conclusion that she failed to exhaust her Title VII claim that CCSD did not promote her to corporal because of her race and gender.

Before filing a Title VII employment action, the plaintiff must first exhaust her administrative remedies beginning with filing a discrimination charge with the EEOC.  Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  In a non-deferral state such as Georgia, the plaintiff must file the EEOC charge within 180 days of the date of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1).  The discriminatory decision not to promote an employee is a discrete act that triggers the 180-day period in which to file a charge of discrimination.  See Ledbetter v. Goodyear Tire & Rubber Co., ___ U.S. ___, 127 S. Ct. 2162, 2169 (2007).  Furthermore, "discrete discriminatory acts are not actionable if time barred."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072 (2002).  The plaintiff also must file her complaint within 90 days of exhausting her administrative remedies and receiving her "right-to-sue" letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1); Green v. Union Foundry Co., 281 F.3d 1229, 1233-34 (11th Cir. 2002).

Bennett did not file her "amended" EEOC charge alleging her failure-to-promote discrimination claims until January 4, 2007.  Thus, her discrimination claims relating to the October 16, 2005 and February 6, 2006 corporal promotions, which occurred outside the 180-day period, are time-barred.

Although the July 23, 2006 and September 17, 2006 corporal promotions are not barred by the 180-day rule, Bennett has not shown that she has received her right-to-sue letter from the EEOC as to these claims.[6]  We also reject Bennett's argument that these claims of disparate treatment gender and race discrimination are related to or grew out of the allegations in her 2005 EEOC charge.[7]  Therefore, Bennett has not established that she exhausted these claims, and the district court properly dismissed them.

### D.    Title VII Claim of Retaliatory Failure to Promote

"As with claims of substantive discrimination, Title VII retaliation claims

--------

[6]Although the 90-day rule is a precondition to suit that is subject to equitable modification, Forehand v. Fla. State Hosp. at Chattahoochee, 89 F.3d 1562, 1569-70 (11th Cir. 1996), Bennett never presented evidence that she received her right-to-sue letter or sought to amend her complaint to allege that she received her right-to-sue letter.

[7]The district court concluded that Bennett's failure-to-promote retaliation claims were within the scope of Bennett's original 2005 EEOC charge because she alleged that the failure to promote her to corporal was retaliation for the 2005 EEOC charge.  Circuits disagree on whether, after National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002), discrete acts of retaliation must be exhausted.  See Wedow v. Kansas City, Mo., 442 F.3d 661, 673-74 (8th Cir. 2006) (retaliation claims remain viable without separate exhaustion); Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (unexhausted retaliation claims are no longer viable after Morgan).  Because the parties do not raise this issue, we assume without deciding that these retaliatory failure-to-promote claims fall within the scope of the 2005 EEOC charge.

20

require that once the plaintiff establishes a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. If the employer offers such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." Crawford v. Carroll, 529 F.3d at 976 (quotation marks and brackets omitted).

"In the context of a promotion, a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." Springer v. Convergys Customer Mgmt. Group, Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (quotation marks omitted). Rather, a plaintiff "must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Id. (quotation marks omitted).

The district court assumed Bennett established a prima facie case of failure to promote and concluded Bennett had not shown that the nonretaliatory reasons for the promotion decisions were pretext. For each of the promotion decisions, Captain Gilberg pointed to certain qualifications of the chosen candidate to explain why he or she was chosen over Bennett. The reasons Captain Gilberg gave for not

21

selecting Bennett included: (1) the disciplinary actions in her personnel file for the Dell computer incident; (2) the counseling memorandum for failure to call in advance of sick leave; (3) the excessive use of sick leave in 2004 and 2005; and (4) the lack of previous experience as a field training officer. Bennett argues these reasons were pretext because she was more qualified than the chosen candidates.

The record does not support Bennett's argument that she was better qualified than other candidates. In fact, all the successful candidates had better records and qualifications than Bennett. For example, Caruthers, promoted on July 23, 2006, and Parker, promoted on September 17, 2006, had served as a field training officers, whereas Bennet refused an opportunity to serve as a field training officer. All candidates promoted to corporal on September 17, 2006 (Lowe, Warren, Fisher and Moye), as well as Caruthers and Parker, had been selected officer of the month or officer of the year, an honor never conferred on Bennett. These officers had no disciplinary actions in their personnel files and had better attendance records than Bennett.

Bennett stresses that she had more years of service than some of the successful candidates. However, seniority was not one of Captain Gilberg's reasons for selecting the successful candidates.

Bennett also argues that CCSD did not use objective criteria in promoting

22

candidates to corporal. While some factors assessed in making a promotion decision were subjective (supervisory ability, professional knowledge and quality of work performance), other factors were objective (disciplinary actions, attendance, special commendations and time in grade). Here, objective factors drove the actual promotion decisions. In any event, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext." Id. at 1349 (quotation marks omitted).

Because Bennett failed to present sufficient evidence of pretext, the district court properly granted summary judgment on Bennett's failure-to-promote retaliation claims.

### III. CONCLUSION

For all the forgoing reasons, we affirm the district court's order granting summary judgment to the defendants.[8]

**AFFIRMED.**

---

[8]We reject Bennett's argument that the district court abused its discretion in denying her Rule 60(b) motion. Because the district court conducted a careful de novo review of Bennett's claims before entering its summary judgment order, Bennett has not shown that any error in providing her notice of the R&R affected her substantial rights.

23