[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15485
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-01317-CV-7-SLB

PAMELA TIGGS-VAUGHN,

Plaintiff-Appellant,

versus

TUSCALOOSA HOUSING AUTHORITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 2, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Pamela Tiggs-Vaughn, an African-American former employee of the

Tuscaloosa Housing Authority ("THA"), appeals the district court's grant of summary judgment in favor of THA on her claim of retaliatory discharge, brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a) and 3(a). After review of the record and the parties' briefs, we AFFIRM.

## I. BACKGROUND

Tiggs-Vaughn began working for THA as a receptionist in January 2000. *See* Doc. 1 ¶ 9; Doc. 39, Exh. A at 26.[1] She was promoted to the position of Neighborhood Coordinator in April 2000, and was promoted again in 2001 to the position of Public Housing Site Manager One, which she held until she was terminated in April 2006. Doc. 1 ¶ 9; Doc. 39, Exh. A at 54-55. On 8 March 2006, Tiggs-Vaughn filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against on the basis of her race when she was denied promotions in October and November 2005. Doc. 48, Exh. 3. On 29 March 2006, Tiggs-Vaughn wrote a letter to THA's Executive Director, Richard Herbert, which read, in relevant part:

> Throughout my employment, Mr. Rick Herbert . . . has continuously subjected me to unprofessional behavior.

---

[1] *See* CM/ECF for the U.S. Dist. Ct. for the N.D. Ala., Case No. 07-01317-CV-7-SLB.

According to the [THA] Personnel Policy and [E]mployee Handbook (June 1, 2000), decision-making policy practices of Mr. Rick Herbert are unethical and racially discriminatory. Jobs are often created for various employees. These job openings were not posted for all employees, but for employees that are appointed by . . . Mr. Rick Herbert. These jobs are given to Caucasian employees and are on a much higher pay scale than that of an African American employee. In most instances, these employees are not qualified for the created position, [n]or do they have degrees or work experience(s) to function and perform efficiently in this position.

The Caucasian employees are also afforded more skilled training opportunities, than an African American. Recently two (2) jobs were posted in which I applied for one of the position[s], and several employees knew first hand who would be hired before the position was ever posted.

On several occasions, I have attempted to reason with Mr. Rick Herbert about various issues that he has against me and it always turns into an unfavorable outcome, or him screaming and shouting at me.

Personally, I refuse to take anymore of Mr. Herber's uninviting and unwelcoming attitudes toward me again. Every time I talk to him or attempt to talk to him on a professional level about [THA] issues/concerns for residents or myself the conversation turns into a shouting match, and he goes into a rage and I politely leave.

. . . .

On several occasions, he has gone into a rage with yelling and screaming in front of other [THA] employees. This madness must be stopped! I know that I have been ostracized, psychologically threatened, embarrassed, ridiculed and unreasonably over burdened . . . .

3

Doc. 48, Exh. 5. She sent copies of the letter to Walt Maddox, the mayor of Tuscaloosa, and Dr. Cordell Wynn, the Chairman of the THA, *see id.*, contending later that THA procedures required her to do so, *see* Doc. 39, Exh. A. at 75-76; Doc. 48, Exh. 4.[2] Herbert issued the following response in a 30 March 2006 memorandum to Tiggs-Vaughn:

> On March 29, 2006, I received a letter from you addressed to me regarding a grievance complaint of discriminatory practices allegedly done by me. A copy of this letter was sent to Dr. Cordell Wynn, and Mayor Walt Maddox. The letter is replete with factual inaccuracies and outright lies. I take all discrimination complaints very seriously and all are investigated on their individual merits. However, I will not tolerate your publishing lies about me to third parties. While your complaints and conduct are under investigation, you are hereby placed upon administrative leave with pay until further notice from me.

Doc. 48, Exh. 10.

Paige Oldshue, THA's general counsel, thereafter conducted an investigation of Tiggs-Vaughn's allegations. Doc. 39, Exh. C. During her

---

[2] The Tuscaloosa Housing Authority Personnel Policy and Employee Handbook does not authorize employees to report grievances to the Mayor. It provides, in pertinent part:

> If at any time an employee believes (s)he is being subjected to harassment or discrimination, or if an employee becomes aware of such conduct being directed at someone else, that employee should promptly notify his/her supervisor, or the Executive Director. . . . In the event the alleged 'harasser' is the supervisor, then the report should be taken to the Executive Director. In the event the alleged 'harasser' is the Executive Director, then the report should be taken to the chairman of the Board of Commissioners.

Doc. 39, Exh. A at 60-61.

4

investigation, Oldshue was unable to find any employees who could substantiate the allegations Tiggs-Vaughn made in her 29 March letter. *Id.* at ¶ 3, 6. Oldshue thus made a "good faith determination that the allegations were in fact false" and advised the THA "that a business decision to terminate Ms. Tiggs-Vaughn was warranted based on her display of dishonesty." *Id.* ¶ 7. On 13 April 2006, Herbert notified in writing Tiggs-Vaughn that her employment was being terminated:

> [Y]ou sent a copy of a letter to Dr. Cordell Wynn and Mayor Walt Maddox where in you knowingly made irresponsible, false and malicious statements against me as Executive Director of the [THA] with the intent to harm and destroy my reputation as Executive Director. Your letter of March 2[9], 2006 . . . was replete with false statements and lies about my conduct as Executive Director. While I respect your legal right to make allegations of discrimination against me, your letter went well beyond a complaint of discrimination. Your letter alleges that I have been verbally abusive to you on repeated occasions. Those statements and others in that letter are absolutely false. Your constant attempts to discredit my position have left me with no other choice than to terminate your employment with the Tuscaloosa Housing Authority.

Doc. 48, Exh. 7.

On 18 April 2006, Tiggs-Vaughn filed an EEOC charge, alleging that she had been "terminated for reporting and opposing race discrimination in employment in violation of Title VII of the Civil Rights Act of 1964." Doc. 48,

5

Exh. 4. Tiggs-Vaughn received a right-to-sue letter from the EEOC on 19 April 2007, *see* Doc. 48, Exh. 8, and filed the instant complaint against THA on July 2007, alleging that THA terminated her in retaliation for filing the 8 March 2006 charge of discrimination and for complaining of discrimination in the 29 March 2006 letter to THA's Board of Commissioners and Mayor Maddox,[3] Doc. 1 at 3.

THA moved for summary judgment on 28 January 2009, arguing, *inter alia*, that it had "legitimate, nondiscriminatory reasons for terminating [Tiggs-Vaughn's] employment: her dishonesty as published in her March 29, 2006 letter, and her disruptive behavior and insubordination." Doc. 38 at 18. Accordingly, THA contended, even if Tiggs-Vaughn could establish a *prima facie* case of retaliation, she failed to meet her burden of showing that the reasons offered by THA for terminating her employment were pretextual. *See* Doc. 38 at 17, 24.

Tiggs-Vaughn responded, arguing that she did not need to establish a *prima facie* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973) because the following was direct evidence of discrimination: (1) the termination itself, because it immediately followed her

---

[3] Tiggs-Vaughn also asserted claims of discrimination based on THA's failure to promote her in October and November 2005. *See* Doc. 1 at 3. The district court found that these claims were time-barred and dismissed them accordingly. *See* Doc. 53 at 8-9. Because Tiggs-Vaughn offers no argument with respect to these claims, she has abandoned them on appeal. *See Hart v. Hodges*, 587 F.3d 1288, 1300 n.12 (11th Cir. 2009) (per curiam) ("[A]rguments not raised by an appellant are deemed abandoned.").

complaints of racial discrimination; (2) the absence of record keeping, which "len[t] itself to deceptive and discriminatory practices"; (3) THA's failure to provide her with the staff she needed to do her job; (4) Herbert's reliance on others' statements against her without verifying the truth of those statements; and (4) Herbert's overbearing and hostile attitude towards her. *See* Doc. 47 at 8, 15-16.

Tiggs-Vaughn argued further that the following evidence showed that THA's proffered reasons for terminating her were pretextual: (1) she had a good faith belief that she had followed the proper procedures for raising a grievance regarding discrimination; (2) Herbert refused to answer a question during his deposition about whether he had any African American friends; (3) Herbert did not perform regular performance evaluations, which "len[t] an amber to the raging torment of discriminatory practices on others"; (3) Herbert was allowed to hire family members against THA policy, leading to a "dysfunctional" organization marked by "discriminatory tendencies." *Id.* at 18, 19-21.

The district court found that while Tiggs-Vaughn had successfully established a *prima facie* case of retaliation, she failed to "meet [THA's] articulated reason [for terminating her] 'head-on' and rebut it." Doc. 53 at 11-12. Specifically, the court found that "[Tiggs-Vaughn's] allegations regarding her

7

good faith belief regarding complaint procedures, Herbert's lack of African American friends, his failure to evaluate her performance, and his hiring of family members [was] not evidence that [THA's] proffered reason for her termination was not an honest explanation." *Id.* at 13. The district court granted THA's motion for summary judgment accordingly and this appeal followed.

## II. DISCUSSION

We review *de novo* a district court's grant of summary judgment, "applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." *Swisher Intern., Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c).

On appeal, Tiggs-Vaughn argues that the district court erred by failing to find that her sworn statement to the effect that she followed protocol in filing her 2006 grievance amounted to direct evidence of unlawful retaliation. Tiggs-Vaughn further argues that Herbert's statement, to wit, that upon receiving Tiggs-Vaughn's 29 March 2006 letter, he referred the matter to THA's counsel for a full investigation "in order to avoid the appearance of retaliation," Doc. 39, Exh. B. at 3, is direct evidence of retaliation.

8

Under Title VII, it is unlawful for an employer to discharge any individual because of that individual's race or color, or to retaliate against any individual for engaging in protected conduct. 42 U.S.C. §§ 2000e-2(a)(1), 3(a). A plaintiff may establish a Title VII claim through direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination. *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "If a plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent." *Id.*

None of what Tiggs-Vaughn cites as direct evidence establishes, without any inference or presumption, that THA's decision to fire her was motivated by a discriminatory intent. Where direct evidence of discrimination is lacking, a plaintiff may present circumstantial evidence of discrimination sufficient to create a jury question. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (per curiam). A retaliation claim based on circumstantial evidence is analyzed according to the burden-shifting framework set forth in *McDonnell*

9

*Douglas. See id.* Under this frame-work, "the plaintiff must first establish a prima facie case [of discrimination] by showing (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action." *Goldsmith v. City of Artmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). Once the plaintiff has satisfied her initial burden, the defendant must, in order to rebut the presumption of retaliation, come forward with a legitimate, non-discriminatory reason(s) for the employment action. *Id.* Assuming the defendant does so, the burden then shifts to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered reason(s) is a pretext for unlawful discrimination. *Id.* "[A] reason cannot . . . be a 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993). "Because the plaintiff bears the burden of establishing pretext for discrimination, he must present significant probative evidence on the issue to avoid summary judgment." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (quotation marks, alterations, and citation omitted). Conclusory allegations or unsupported assertions of discrimination, without more, "are not sufficient to raise an inference of pretext." *Id.* (quotation marks and citation omitted). Rather, the plaintiff must meet the

10

proffered reason "head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).

Tiggs-Vaughn presented no evidence that the performance-related reasons cited by THA were false and that discrimination was the true reason for her termination. Specifically, she presented no evidence to refute Oldshue's conclusion, based on her investigation, that Tiggs-Vaughn's allegations against Herbert were false. Although Tiggs-Vaughn stated in her letter that "[o]n several occasions, [Herbert] has gone into a rage with yelling and screaming in front of other [THA] employees," no other employees had witnessed Herbert's alleged rages. Nor did Tiggs-Vaughn present any evidence to counter THA's assertion that she was a disruptive employee. Tiggs-Vaughn's conclusory allegations and unsupported assertions of discrimination and retaliation were insufficient to raise an inference of pretext and rebut THA's alleged legitimate, non-discriminatory reasons for terminating her employment. *See Mayfield*, 101 F.3d at 1376.

### III. CONCLUSION

Tiggs-Vaughn appeals the district court's grant of summary judgment in favor of THA on Tiggs-Vaughn's claim of retaliation. For the foregoing reasons, we AFFIRM.

**AFFIRMED.**

11