[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15066
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cv-01122-WKW-TFM


WILLIE ADAMS,

Plaintiff-Appellant,

versus


CITY OF MONTGOMERY,
GAIL GIPSON,
JAMES IVEY,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(June 20, 2014)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

This is an employment discrimination case brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2a, 2000e-3, and 42 U.S.C. §§ 1981 and 1983.  Willie Adams sued his employer, the City of Montgomery ("City"), Gail Gipson, the City's Director of the Maintenance Department, and James Ivey, his former supervisor on an asphalt crew.  The District Court granted the City, Gipson and Ivey summary judgment, and Adams appeals.[1]  We affirm.

Willie Adams is black.  He first worked for the City from September 2003 to August 2004.  On August 10, 2007, the City re-hired him as a temporary employee to work on an asphalt crew.  He became a permanent employee, as a Service Maintenance Worker I, on February 8, 2008.  Between February 25, 2009, and the entry of judgment in this case, he has been employed as an Equipment Operator, a position requiring the use of his CDL license.  His duties include driving a City dump truck and hauling equipment and materials for City concrete crews.

Adams filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in June 2008.  The EEOC did not intervene,

---

[1] In its order granting summary judgment, the District Court observed that Adams had stated that Ivey "'had nothing to do *with this case*.'" (emphasis added).  Doc. 90 at 3 quoting from Doc. 76-1, at 10.

and after obtaining a right-to-sue letter, he sued the City in the District Court,[2] alleging that it discriminated against him (1) by not hiring him as a truck driver in November 2007; (2) by not re-hiring him as a Service Maintenance Worker III in 2008; (3) by reprimanding and suspending him in May, August and September of 2008; (4) and by retaliating against him by reprimanding, suspending and transferring him from the asphalt crew to the ditch crew in 2008. That case has been finally disposed of.

Adams filed the instant case against the City on December 29, 2011. He also filed another race discrimination case under Title VII and §§ 1981 and 1983 against the City, Gipson and Ivey on June 20, 2012. The District Court consolidated them. His allegations were that he was discriminated against on the basis of race and suffered retaliation because of his history of filing complaints with the EEOC. In particular, he applied for a lateral transfer to two different truck driver positions and had more experience than others who applied, but the positions were given to a white and to a black who had never complained to the EEOC. He was also subjected to a drug test, along with other blacks, after the City received a call reporting the smell of marijuana coming from a City truck.

The District Court rejected Adams's claims on summary judgment because he presented no direct evidence to support the claims and he was unable to

---

[2] *Adams v. City of Montgomery*, Case No. 2:10-cv-924-MHT (M.D. Ala. Apr. 24, 2012),

3

establish a *prima facie* case under burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), based on circumstantial evidence for either the denial of the transfer or the drug test. That is, he failed to show how either the transfer or the drug test amounted to an adverse employment action. Moreover, as for the drug test, he failed to point to a comparator. Turning to the claim that the denial of the lateral transfers constituted an act of retaliation, the court held that there was no direct evidence of retaliation and that Adams failed to establish a *prima* facie case under *McDonnell Douglas* based on circumstantial evidence. Specifically, he failed to present evidence of an adverse action---how the denial of his request of a lateral transfer would dissuade a reasonable employee from engaging in protected activity.

On appeal, Adams summarily argues that the District Court erred in granting the defendants' motion for summary judgment on his discrimination claims. He also argues that he presented direct evidence sufficient to survive summary judgment on his claim that the denial of a transfer was retaliatory, contending that the denial was an adverse action, and that the City's reasons for the denial were pretext. Finally, he argues that the court erred in granting summary judgment on his retaliation claim based on a drug test. He contends the drug test was an adverse action and was causally connected to his filing of complaints with the EEOC.

We review a district court's grant of summary judgment *de novo*. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. *Id.* at 836-37. With this standard in hand, we turn to Adams's arguments, beginning with his argument that the District Court erred in rejecting his claims of racial discrimination.

The law is well settled in this circuit that a legal claim or argument that has not been briefed on appeal is deemed abandoned; hence, we do not address its merits. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). If an argument is not fully briefed, "evaluating its merits would be improper both because the appellant[] may control the issues [he] raise[s] on appeal, and because the appellee[s] would have no opportunity to respond[.]" *Id.* An issue may be deemed abandoned where a party only mentions an issue in passing, without providing substantive argument in support. *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (refusing to reach an issue mentioned in passing in the brief filed by counsel because the issue had no supporting argument or discussion).

Adams's argument that the court erred in rejecting his racial discrimination claims fails because his brief makes nothing more than a passing mention of those

5

claims.  The brief does not argue that the adverse employment actions, the denial of a lateral transfer or the drug test, were imposed on a protected class, such as his race.  Adams, who is counseled on appeal, did not respond in his reply brief to the appellees' argument that he has waived his discrimination claims.  His failure to offer any specific allegations of race discrimination impeded their ability to defend or respond to the claims.  *Access Now, Inc.*, 385 F.3d at 1330.  Those claims are accordingly abandoned.  We move then to the claim that the denial of a lateral transfer constituted actionable retaliation.

Where there is no direct evidence of unlawful retaliation, the plaintiff may avoid summary judgment with circumstantial evidence, utilizing, as Adams did in the District Court, the *McDonnell Douglas* burden-shifting framework.  *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).  Direct evidence is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption.  *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002).  Under the *McDonnell Douglas* framework, the plaintiff must first make a *prima facie* case of retaliation.  *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824.  If the plaintiff makes a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision.  *Id.*  If the employer successfully meets this burden of production, then the burden shifts back to the

plaintiff to show that each proffered reason was pretext. *Id.* at 804, 93 S.Ct. at 1825.

A *prima facie* case of retaliation under Title VII requires the plaintiff to show that (1) he engaged in an activity protected under Title VII, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Protected activity under Title VII includes making a charge under the subchapter. 42 U.S.C. § 2000e-3(a). For an action to be an adverse action in the context of retaliation, the action "must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 68, 126 S.Ct. 2405, 2409, 2415, 165 L.Ed.2d 345 (2006). "Title VII retaliation claims require proof that the [employer's] desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ___, ___, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013). The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But mere temporal proximity, without more, must be "very close." *Id.* (quotations omitted) (holding that a three to four month disparity between the statutorily protected expression and the adverse

employment action was not enough).  Summary judgment is appropriate if the plaintiff fails to satisfy any one of the elements of a *prima facie* case.  *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998).

As a preliminary matter, we note that the evidence supposedly supporting this claim is circumstantial.  *See Brown*, 597 F.3d at 1181.  Contrary to Adams's argument, Gipson's explanation as to why she did not transfer Adams, taken in the light most favorable to Adams, cannot be treated as direct evidence.  Gipson did not transfer Adams for two reasons: (1) Adams would derive no benefit from the transfer in his pay, hours, benefits, or job duties; and (2) if transferred, he would be working for Ivey, a supervisor whom Adams had accused of race discrimination.  This evidence is not direct; Gipson's statements do not prove the existence of retaliation without inference or presumption.  *Scott*, 295 F.3d at 1227.  To prevail, Adams had to make out a *prima facie* case for retaliation under *McDonnell Douglas Corp.*

The evidence, viewed in the light most favorable to Adams, does not show a *prima facie* case for retaliation.  First, he does not show how the denial of a transfer that would involve driving a larger truck, but would not involve any difference in pay, hours, benefits, or duties, was an adverse action that would dissuade a reasonable employee from engaging in protected activity.  *See Burlington Northern*, 548 U.S. at 68, 126 S.Ct. at 2415.  Second, he does not show

8

a causal connection between the protected activity and the allegedly adverse action. He was denied a lateral transfer to driving a dump truck for an asphalt crew in September 2011. He received a letter of determination on his first EEOC charge on March 31, 2010. He filed a second EEOC charge in March 2010, but did not receive a notice of right to sue on that charge until September 30, 2011. Therefore, at the time Gipson denied the transfer to Adams in September 2011, the most recent protected activity of which the defendants were aware occurred in March 2010. Eighteen months between the statutorily protected activity and the allegedly adverse action is not "very close," as to establish causation, without more. *Thomas*, 506 F.3d at 1364.

Finally, assuming that Adams had made a *prima facie* case, he was unable to rebut, as pretext, each of the employer's legitimate nondiscriminatory reasons for not transferring him. Gipson's desire to avoid potential conflict between Adams and Ivey is not implausible or evidence of retaliation. Adams argues that Gipson's general testimony about lateral transfers and career advancement, coupled with her specific testimony of why the transfer would not benefit him, shows pretext. The evidence shows, however, that the transfer would not benefit Adams. Accordingly, the defendants are entitled to summary judgment on this claim of retaliation.

Adams's claim that the drug test was retaliatory similarly fails. As outlined above, the elements of a *prima facie* case for retaliation are (1) the plaintiff

9

engaged in an activity protected under Title VII, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford*, 529 F.3d at 970. With respect to the causal connection, a plaintiff must generally establish that the employer was actually aware of the protected activity at the time it took the adverse action. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). Once a plaintiff has established his employer's awareness of the protected activity, he can meet the causation burden by showing close temporal proximity between the protected activity and the employer's adverse action, but absent more, mere temporal proximity must be "very close." *Thomas*, 506 F.3d at 1364.

The District Court determined that the drug test was an adverse action. However, Adams failed to establish a causal connection between the drug test, which occurred on October 3, 2011, and his protected activity. The defendants were not aware of his most recent notice of right to sue until October 5, 2011. The affidavit of the Administrative Secretary for the City of Montgomery, City Attorney's Office, showed that the appellees received Adams's most recent notice of right to sue on October 5, 2011, when the Secretary received the notice in the mail, opened it, and date stamped it. The District Court confirmed that appellees had received the notice on that date. Accordingly, previous to the drug test, the most recent protected activity of which appellees had knowledge was Adams's

10

EEOC letter of determination issued in March 2010.  As with the retaliation claim for the denial of transfer, he failed to show a causal connection based on the proximity of events.  Absent other evidence of causation, of which there is none, the temporal proximity must be very close.  *Thomas*, 506 F.3d at 1354.  Nineteen months does not satisfy that requirement.  Viewing the evidence in the light most favorable to Adams, he is unable to present a *prima facie* case for retaliation with respect to the drug test.  Summary judgment in favor of the defendants was appropriate on this claim.

For the reasons stated, the judgment of the District Court is

AFFIRMED,