**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A2148. TUOHY v. CITY OF ATLANTA et al.

BOGGS, Judge.

Edward Tuohy filed a complaint against the City of Atlanta, Mayor Kasim Reed, and the Atlanta City Council (collectively "the City"), alleging that he was terminated in retaliation in violation of the Georgia Whistleblower Act, OCGA § 45-1-4. The trial court granted summary judgment in favor of the City, and Tuohy now appeals. For the following reasons, we affirm.

On appeal from the grant of summary judgment, this court applies a de novo standard of review. *Higginbotham v. Knight*, 312 Ga. App. 525, 526 (719 SE2d 1) (2011). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We must view the evidence, and all reasonable inferences drawn

therefrom, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the evidence showed that Tuohy was hired in March 2011 as treasurer for the City working for the Chief Financial Officer. In July 2011, Mazyck Advisors submitted to the City invoices totaling $51,882.28 for advisory services. On August 8, 2011, the chief financial officer for the City, Joya DeFoor, sent Tuohy an email instructing him to pay the entire invoice "from the remaining cost of issuance funds. Your staff should be able to determine how much in COI is remaining from the bank statement without contacting Watershed." When Tuohy determined that there were no Watershed funds to pay the invoice, he emailed DeFoor and asked her to advise him which source he should pay them from. Tuohy stated that he "felt the fact that the wire was not in its entirety a Watershed wire, I knew that the invoices, from looking at the invoices, supporting documentation of the wire that it was for more than just Watershed." Tuohy stated further that he knew that three other City departments benefitted from the contractor's work and that the proper procedure would be to only charge that portion to Watershed that benefitted Watershed.

On August 25, 2011, Tuohy wired $51,882.28 to Mazyck Advisors but did not charge the amount to the Department of Watershed. He asserted that in September

2011, he "received a second email from Ms. DeFoor instructing him to charge the entire invoice to the Department of Watershed and to not report this to the Financial Officer of that Department."[1] Tuohy discussed his concerns with John Gaffney, the City Controller, who testified that Tuohy believed that how he was instructed to charge the invoice "may be illegal." Gaffney considered the request to charge an invoice to a department without that department's knowledge to be unethical, but expressed no opinion regarding whether it was illegal, and advised Tuohy to take this concern to the ethics board or consult with the law department.

In October 2011, Tuohy still had not charged the invoices to the Department of Watershed and contacted his direct supervisor, Stefan Jaskulak, Deputy CFO for the City, to inform him that he objected to DeFoor's instructions and would not charge the wire to Watershed as directed.[2] A week later, on October 12, 2011, the City terminated Tuohy's employment. The next day, Tuohy met with City officials and was told that he had been fired for "performance issues."

---

[1] While Tuohy's verified complaint averred that he received this email, he testified in his deposition that he did not have a copy of this communication because it was "on my desk, at the City of Atlanta."

[2] Jaskulak testified that Tuohy merely inquired how to process the invoice and did not express concern about the instructions he received from DeFoor.

3

In March 2012, Touhy filed a complaint under the Georgia Whistleblower Statute asserting that he was terminated in retaliation "because he objected to performing an improper illegal financial transaction." He maintained that he believed DeFoor's instructions to charge the entire invoice to the Department of Watershed, particularly without notifying that department's CFO, was improper and "probably illegal," and that he confirmed that it was in violation of City policies and procedures. In April 2012, the City's Department of Human Resources issued a report of its own investigation of the matter, and concluded that there was insufficient evidence to show that Tuohy spoke with Jaskulak or DeFoor regarding what he believed to be an illegal or unethical directive, and insufficient evidence that his termination was based on his alleged whistleblowing activity.

The City moved for summary judgment on the ground that Touhy failed to establish a prima facie case for retaliation. Specifically, it asserted that Tuohy did not question the propriety of DeFoor's instructions concerning the invoice, and that the manner of payment of the invoices was not in violation of the City Code, nor in violation of Governmental Accounting Standards Board Standards or Generally Accepted Accounting Principle. The City also contended that Touhy was terminated for poor work performance, noting that he erroneously approved duplicate payments

4

of "approximately four or five million dollars," and that he used a City telephone to make threatening phone calls to the husband of a woman with whom he had previously been in a relationship.

In granting summary judgment in favor of the City, the trial court applied the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 804 (93 SCt 1817, 36 LE2d 668) (1973), and determined that Tuohy failed to establish a prima facie case of retaliation, and in any case, did not show that the reasons given for his termination were pretextual. We agree with the latter conclusion and affirm the grant of summary judgment. See *Georgia-Pacific v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) (appellate court may affirm the grant of summary judgment when it is right for any reason).

1. Under Georgia's whistleblower statute, a public employer may not retaliate against a public employee for disclosing "a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency," or "for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." OCGA § 45-1-4 (d) (2) and (3). "Retaliate" or "retaliation" is defined as

the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

OCGA § 45-1-4 (a) (5).

We held in *Forrester v. Georgia Dept. of Human Svcs.*, 308 Ga. App. 716 (708 SE2d 660) (2011) (physical precedent only), that "the *McDonnell Douglas* burden-shifting analysis used in Title VII *retaliation* cases is appropriately utilized in the context of evaluating whether a state whistle[ ]blower claim is subject to summary adjudication." (Emphasis in original.) Id. at 721 (1). While *Forrester* is physical precedent only, we agree that the *McDonnell Douglas* analysis should be employed for whistleblower claims in Georgia brought pursuant to OCGA § 45-1-4 (d).[3] See *Freeman v. Smith*, 324 Ga. App. 426, 428-429 (1) (750 SE2d 739) (2013) (noting that *McDonnell Douglas* framework was approved in the physical precedent of *Forrester*, but court not required to decide whether the framework should be adopted because under any standard no evidence of adverse employment action);

---

[3]We note that Georgia courts have adopted this framework to analyze state discrimination cases. See *Bailey v. Stonecrest Condo Assn.*, 304 Ga. App. 484, 488 (1) (696 SE2d 462) (2010).

6

*Caldon v. Bd. of Regents &c.*, 311 Ga. App. 155, 159 n.6 (715 SE2d 487) (2011) (acknowledging that no Georgia court has explicitly set forth the standard for analyzing when summary judgment appropriate on whistleblower claims but not expressly adopting *McDonnell Douglas* framework); but see *Albers v. Georgia Bd. of Regents &c.*, 330 Ga. App. 58 (766 SE2d 520) (2014) (analyzing only prima facie elements of whistleblower claim as ruled upon by trial court with no discussion of *McDonnell Douglas* burden-shifting analysis).[4]

---

[4]As noted in *Freeman*, supra, not all states have adopted the *McDonnell Douglas* framework. See id. at 429 (1). But our research has discovered at least 34 states that have adopted it for cases involving violations of state law and allegations of discrimination or retaliation, including whistleblower claims. See *Raad v. Alaska State Comm. for Human Rights*, 86 P3d 899, 904 (III) (B) (Alaska 2004); *Johnson v. Windstream Communications*, 2012 Ark. App. 590 (2012); *Yanowitz v. L'Oreal USA*, 116 P3d 1123, 1042 (II) (Cal. 2004); *Mele v. City of Hartford*, 855 A2d 196, 206 (I) (Conn. 2004); *Gary v. R.C. Fabricators*, No. 11C-12-208, at *67-68, 2014 Del. Super. LEXIS 420 (De. Super. Ct., July 30, 2014); *Bryant v. District of Columbia*, 102 A3d 264, 267-268 (II) (D.C. 2011); *St. Louis v. Florida Intl. Univ.*, 60 So3d 455, 458-459 (Fla. Dist. Ct. App. 2011); *Stucky v. Brown*, No. 26463, 2007 Haw. LEXIS 157, at *37 (XIV) (Haw., May 31, 2007); *Frogley v. Meridian Joint School District No. 2*, 314 P3d 613, 619 (V) (A) (Idaho 2013); *Unger v. Sirena Div. of Consolidated Foods Corp.*, 377 NE2d 266, 272 (Ill. App. Ct. 1978); *Fuller v. Allison Gas Turbine Div. &c*, 670 NE2d 64, 68 (II) (Ind. 1996); *White v. Tomasic*, 69 P3d 208, 211 (Kan. Ct. App. 2003); *Kentucky Dept. of Corrections &c. v. McCullough*, 123 SW3d 130, 133-134 (II) (A) (Ky. 2003); *Burnett v. East Baton Rouge Parish School Bd.*, 99 So3d 54, 59 (La. Ct. App. 2012); *DiCentes v. Michaud*, 719 A2d 509, 514 (IV) (Me. 1998) (whistleblower act case); *Dept. of Nat. Resources v. Heller*, 892 A2d 497, 510-511 (Md. 2006) (whistleblower act case); *Jackson v. Suffolk County Sheriff's Dept.*, No. 08-P-470, 2009 Mass. App. Unpub. LEXIS 363, at *1 (Mass. App. Ct., April 9, 2009)

Under the *McDonnell Douglas* framework, the plaintiff must first make a prima facie case of retaliation. If the plaintiff makes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. If the employer successfully meets this burden of production, then the burden shifts back to the plaintiff to show that each proffered reason was pretext.

---

(whistleblower act case); *Debano-Griffin v. Lake County &c.*, 828 NW2d 634, 638 (III) (Mich. 2013); *Grundtner v. Univ. of Minn.*, 730 NW2d 323, 329 (I) (Minn. Ct. App. 2007) (whistleblower act case); *Helvering v. Union Pacific R. Co.*, 703 NW2d 134, 146-154 (Neb. Ct. App. 2005); *Appeal of Seacoast Fire Equip. Co.*, 777A2d 869, 872 (I) (N.H. 2001) (whistleblower act case); *Winters v. North Hudson Regional Fire &c.*, 50 A3d 649, 662 (V) (N.J. 2012) (whistleblower act case); *Juneau v. Intel Corp.*, 127 P3d 548, 551 (N.M. 2005); *Nofal v. Jumeirah Essex House*, No. 5627/2011, 2013 N.Y. Misc. LEXIS 2289, at *13 (B) (N.Y. App. Div., May 14, 2013); *Manickavasagar v. N. C. Dept. of Public Safety*, 767 SE2d 652, 659 (III) (B) (N.C. Ct. App. 2014) (whistleblower act case); *Heng v. Rotech Medical Corp.*, 720 NW2d 54, 60 (III) (N.D. 2006) (whistleblower act case); *Kudla v. Olympic Steel*, No. 101104, at *66-67 (III) (B), 2014 Ohio App. LEXIS 5003 (Ohio Ct. App., November 20, 2014); *Uber v. Slippery Rock Univ. of Penn. &c.*, 887 A2d 362, 367 (Pa. Commw. Ct. 2005); *Shoucair v. Brown Univ.*, 917 A2d 418, 426-427 (II) (B) (R.I. 2007); *Lord v. Hy-Vee Food Stores*, 720 NW2d 443, 449-450 (B) (S.D. 2006); *Brown v. CB&I, Inc.*, No. 09-12-00521-OCGA §, at *17 (IV) (B) (2), 2014 Tex. App. LEXIS 505 (Tex. Ct. App., January 16, 2014); *Viktron/Lika Utah v. Labor Comm.*, 38 P3d 993, 995 (Utah Ct. App. 2001); *Griffis v. Cedar Hill Health Care Corp.*, 967 A2d 1141 1145-1146 (I) (Vt. 2008); *Davis v. The Washington State Patrol*, No.71736-7-I, at *26, 2014 Wash. App. LEXIS 2438 (Wash. Ct. App., October 13, 2014).

The *McDonnell Douglas* framework is also used for federal court actions brought pursuant to the Whistleblower Protection Act, 5 USCS § 2302. See *Ivey v. Paulson*, 222 Fed. Appx. 815 (11th Cir. 2007).

(Citations and punctuation omitted.) *Adams v. City of Montgomery*, 569 Fed. Appx. 769, 772 (11th Cir. 2014); see *Forrester*, supra, 308 Ga. App. at 722 (1).[5]

2. *Prima Facie Case of Retaliation*. Because we hold below that Tuohy has failed to satisfy his burden of establishing that the proffered reason for his termination was pretextual, we need not address whether he established a prima facie case of retaliation.

3. *Burden-shifting Analysis*. Assuming that Tuohy had established a prima face case, the burden of production shifts to the City to articulate some legitimate, nondiscriminatory reason for the employment decision. *Adams*, supra, 569 Fed. Appx. at 772.

(a) The City asserted that Tuohy was terminated from employment because of "performance issues." Jaskulak asserted in his deposition that the decision to terminate Tuohy was communicated to him in July 2011 by DeFoor, and that Tuohy was "not getting up to speed quick enough" and "was slow in providing deliverables." Jaskulak explained further that Tuohy was not terminated in July, however, because

---

[5]We acknowledge the concerns raised in *Freeman*, supra, regarding the potential difficulties in applying this framework. 324 Ga. App. at 429 (1). We therefore take this opportunity to encourage trial courts to be mindful not to weigh evidence or assess the credibility of witnesses in applying the framework on whistleblower claims at the summary judgment stage.

he told "the CFO that [he] wanted a chance to work with Tuohy, talk to him, and hopefully bring him up to speed." He explained further that when Tuohy was ultimately terminated in October 2011, it was because Tuohy was "slow on deliverables" and that he in September 2011 erroneously approved "two sets of duplicate wires," which the City asserted in its brief on motion for summary judgment totaled between four and five million dollars.

Jaskulak, in deposition and in his statement to the City, asserted that in early October 2011, he received a call from the husband of Tuohy's former girlfriend who alleged that Tuohy had called and threatened him from a City phone number. The husband told Jaskulak that he contacted the police about Tuohy's threats, and Jaskulak obtained a copy of the police report. The man also provided a statement to the City during its investigation in which he asserted that he had called Tuohy on October 5, 2011, to request that Tuohy stop calling his wife. Tuohy returned the phone call on the same day, and during the course of the conversation told the husband, "I will kill you," "I will send you back to your country in pieces," and "I know a lot of people in high places because of my job in government." Jaskulak testified that this incident may have been "the straw that broke the camel's back" resulting in Tuohy's termination.

10

"The employer need not *persuade* the court that its proffered reasons are legitimate, as its burden is merely one of production, not proof. This intermediate burden is exceedingly light." (Citations and punctuation omitted; emphasis supplied.) *Burgos-Stefanelli v. United States Dept. of Homeland Security*, 410 Fed. Appx. 243, 247 (III) (11th Cir. 2011).[6] We therefore hold that the evidence presented by the City here satisfies its burden to articulate some legitimate, nondiscriminatory reason for the Tuohy's termination. See id.

(b) Because the City has met its burden regarding its proffer of a nondiscriminatory reason for Tuohy's termination, the burden shifts for Tuohy to show that each proffered reason was a pretext. *Adams*, supra, 569 Fed. Appx. at 247 (III).

> In discussing this issue, [the Georgia] Supreme Court has held that pretext is established by a direct showing that a discriminatory reason more likely motivated the [defendant] or by an indirect showing that the [defendant's] explanation is not credible. To avoid summary judgment, a plaintiff must present significantly probative evidence on

---

[6]We find the Eleventh Circuit cases using the *McDonnell Douglas* framework to analyze federal discrimination and retaliation cases persuasive. See *McKeen v. FDIC*, 274 Ga. 46, 48 n.1 (549 SE2d 104) (2001) ("While this Court is not bound by decisions of the Eleventh Circuit construing federal law, they are persuasive.").

the issue of pretext because the plaintiff has the burden of establishing pretext.

(Citations and punctuation omitted.) *Bailey v. Stonecrest Condo Assn.*, 304 Ga. App. 484, 491 (1) (b) (696 SE2d 462) (2010). And the Eleventh Circuit has articulated the burden of establishing pretext as follows:

> A reason is not pretextual unless it is shown both that the reason was false, and that discrimination or retaliation was the real reason. If the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason, or showing that the decision was based on erroneous facts.

(Citation and punctuation omitted.) *Tarmas v. Secretary of the Navy*, 433 Fed. Appx. 754, 761 (III) (B) (11th Cir. 2011); see *Bennett v. Chatham County Sheriff Dept.*, 315 Fed. Appx. 152, 159 (II) (11th Cir. 2008).

Under either directive, Tuohy has failed to show that the reason for his termination was pretextual. Tuohy argues that the termination was pretextual because the City offered him no reason for its decision on the day he was terminated, provided no documentary evidence from his personnel file to support its assertion that it terminated him for performance issues, and did not assert until April 2012 that

12

another proffered reason for his termination was the telephone complaint. Even if these assertions are true, they do not "present a basis for the disbelief of the [City's] *overall* justification." (Citation and punctuation omitted; emphasis in original.) *Blockum v. Fieldale Farms Corp.*, 275 Ga. 798, 802 (4) (573 SE2d 36) (2002). The City informed Tuohy the day after his termination that he was terminated for performance reasons, and even without the telephone complaint, the improper approval of duplicate wires occurred only weeks prior to his termination. Tuohy's assertions are not a direct showing that a discriminatory reason more likely motivated the City. See *Benjamin v. SNF Holding* Co., No. 14-13218, 2015 U.S. App. LEXIS 3764, at *10-11 (III) (11th Cir., March 11, 2015) (summary judgment proper where employee failed to present evidence that employer was motivated by discriminatory intent).

Moreover, Tuohy has failed to make an indirect showing that the City's explanation is not credible, or, as stated by the Eleventh Circuit, failed to rebut the reasons given by the City for his termination. See *Tarmas*, supra, 433 Fed. Appx. at 761 (III) (B). To the contrary, he conceded that he was responsible for a duplicate wire transfer. He also admitted calling the husband of a former girlfriend, although he could not recall whether he called from a City phone number, and that he told the

13

husband "that he could be deported for" leaving him threatening voicemails. Tuohy admitted that he was angry during the conversation, but denied threatening the husband. This evidence, taken in its totality, fails to rebut the reasons given by the City for his termination. See *Benjamin*, supra (where employee was discharged for deficient work performance, employee did not meet the reason head on and cannot succeed by merely "quarreling with the wisdom" of the employer's reasons).

Tuohy's assertions here are insufficient to raise a genuine issue of material fact regarding whether the City's reasons for his termination were a pretext for retaliation. See *Crawford v. City of Fairburn*, 482 F3d 1305, 1309 (III) (11th Cir. 2007) (summary judgment proper for employer where employee failed to rebut reasons given for termination); see also *Tiggs-Vaughn v. Tuscaloosa Housing Auth.*, 385 Fed. Appx. 919, 923 (11th Cir. 2010) (assertion of pretext insufficient where employee failed to present any evidence to counter employer's claim that she was disruptive employee). For this reason, the trial court did not err in granting the City's motion for summary judgment on Tuohy's whistleblower claim. See *Crawford*, supra, 482 F3d at 1309 (III).

*Judgment affirmed. Barnes, P. J., and Branch, J., concur.*

14