**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 23, 2018**

# In the Court of Appeals of Georgia

A17A1836. MURRAY-OBERTEIN v. GEORGIA GOVERNMENT TRANSPARENCY AND CAMPAIGN FINANCE COMMISSION.

BARNES, Presiding Judge.

Elisabeth Murray-Obertein appeals from the order of the trial court granting the Georgia Government Transparency and Campaign Finance Commission's ("the Commission") motion for summary judgment. Murray-Obertein contends that the trial court erred in finding that her retaliation claim under the Georgia Whistleblower Act, OCGA § 45-1-4 et seq (the "GWA"), was precluded because she was not an "employee" at the time of the Commission's purported retaliatory acts. Upon our review, we affirm.

On appeal from the grant of summary judgment, this court applies a de novo standard of review. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations omitted.) *Tuohy v. City of Atlanta*, 331 Ga. App. 846 (771 SE2d 501) (2015).

The trial court's grant of summary judgment was limited to whether a "public employee" as defined by the GWA includes former employees, and in concluding that it did not, the trial court did not address whether, under the GWA, Murray-Obertein was engaged in protected acts or whether the Commission's acts were retaliation. Thus, the underlying claims are not at issue in this appeal.

With that being so, the facts pertinent to this appeal demonstrate that Murray-Obertein was employed by the Commission from December 2011 until January 29, 2014. On October 28, 2014, she filed the underlying complaint in which she alleged that the Commission had retaliated against her because of the following: on August 1, 2013, she gave a deposition in a case brought against the Commission regarding violations of OCGA § 45-10-3 related to a campaign finance ethics investigation; on February 17, 2014, she testified as a witness at the ensuing trial arising from that complaint; and on June 11, 2014, she had resolved by settlement agreement her own claims against the Commission. According to the complaint, the alleged retaliation was derogatory statements the Commission's Executive Secretary made during

2

interviews with the media, all of which occurred after Murray-Obertein was no longer employed with the Commission. Murray-Obertein did not allege any adverse employment actions. In granting summary judgment to the Commission, the trial court found that the definition of "public employee" for purposes of bringing a retaliation claim pursuant to the GWA, means a current employee, rather than a former employee. Thus, it found that because Murray-Obertein was not employed by the Commission at the time of the purportedly retaliatory acts, her claims pursuant to the GWA failed. We agree.

"The GWA creates a cause of action for retaliatory discharge, suspension, demotion, or other adverse employment action taken against a public employee (as defined by the Act) by a public employer as a result of the employee's disclosure of, or refusal to participate in, violation of the law." *West v. City of Albany*, 300 Ga. 743 (797 SE2d 809) (2017. Under the GWA,

> [n]o public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

OCGA § 45-1-4 (d) (2). "Public employee" is defined as

3

any person who *is* employed by the executive, judicial, or legislative branch of the state or by any other department, board, bureau, commission, authority, or other agency of the state. This term also includes all employees, officials, and administrators of any agency covered by the rules of the State Personnel Board and any local or regional governmental entity that receives any funds from the State of Georgia or any state agency.

OCGA § 45-1-4 (a) (3). (Emphasis supplied.)

In moving for summary judgment, the Commission asserted that even though the WBA waives sovereign immunity, see *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013) ("OCGA § 45-1-4 sets forth a specific waiver of the County's sovereign immunity and the extent of such waiver"), it must be narrowly construed, and under such construction, Murray-Obertein is not a "public employee" as defined by the statute. On appeal, Murray-Obertein contends that the trial court's interpretation of the GWA was overly restrictive. According to Murray-Obertein, the GWA does not require that a person who was formerly a public employee at the time of the protected activity remain employed at the time of the retaliation. Moreover, she asserts, permitting public employers to engage in post-employment retaliation, "defeats the remedial nature of the statute and denies a whistleblower redress." Murray-Obertein argues that this Court should look to the United States Supreme

4

Court's decision in *Robinson v. Shell Oil Co.*, 519 U. S. 337 (117 SCt 843, 136 LE2d 808) (1997), in which the Court held that retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e et seq.("Title VII"), applied to former employees.

In *Robinson*, an former employee filed suit under § 704 (a) of Title VII, which makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have availed themselves of Title VII's protections. Id. at 339-340. After, "first . . . interpreting [the] statute . . . to determine whether the language at issue has a plain and unambiguous meaning," the Supreme Court found the term "employee" ambiguous within the context of § 704 (a), because, among other things, and of significance in this case, "there is no temporal qualifier in [the statute] such as would make plain that § 704(a) protects only persons still employed at the time of the retaliation." Id. at 340-341 (II). "Employee" under Title VII is defined as "an individual employed by an employer." 42 USCS 2000e(f)). Compare *Walters v. Metropolitan Ed. Enterprises, Inc*., 519 U.S. 202, 207-208 (117 SCt. 660, 136 LE2d 644) (1997) (the term "employees" in § 701(b), 42 USCS § 2000e (b), referred to those persons with whom an employer has an existing employment relationship

5

because §701(b) has two significant temporal qualifiers signifying current employment relationships.)

Thus, while *Robinson* indicated that former employees were included in the definition of "employees" in Section 704(a) of Title VII, that case is distinguishable from the circumstances in this case because OCGA § 45-1-4 (a) (3) expressly defines "public employee" as a person "who *is* employed," thus employing the temporal qualifier "is."

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Consequently, courts sometimes refer to the rules of English grammar, inasmuch as those rules are the guideposts by which ordinary speakers of the English language commonly structure their words, and the legislature is presumed to know the rules of grammar. Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations, footnote and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013). See OCGA § 1-3-1 (b) (words are given their ordinary

6

meaning unless they are words of art or words that are given a particular meaning within a particular trade or subject matter.); *Smith v. Ellis*, 291 Ga. 566, 573 (3) (a) (731 SE2d 731) (2012) ("In construing statutes … we do not read words in isolation, but rather in context.") (citations omitted).

In this case, OCGA § 45-1-4 (d) (2) provides, in pertinent part that "[n]o public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation." The term "retaliate" refers to

> the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

OCGA § 45-1-4 (a) (5). In construing the provisions of the WBA, we have held that to establish a claim under the statute, a public employee must demonstrate that (1) she was employed by a public employer; (2) she made a protected disclosure or objection; (3) she suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action. See *Albers v. Ga. Bd. of Regents &c.,* 330 Ga. App. 58, 61 (1) (766 SE2d 520) (2014). It follows that, in looking to the plain and unambiguous language of these provisions

7

in concert with the WBA's definition of a "public employee" as a person "who *is* employed," it is evident that a "public employee" as defined by the statute does not apply to a former employee who was allegedly retaliated against after her employment, but instead limits retaliation to acts committed against current employees. Indeed, such an analytical framework aligns with the statute's prohibition against "adverse employment action[s]" for making disclosures. See OCGA § 45-1-4 (d) (2).

While the WBA anticipates that in some instances, the retaliation may not be discovered until some time in the future, at which time the "public employee" may no longer be employed by the agency, see OCGA § 45-1-4 (e) (1), (2) (A)-(E), the statute clearly mandates that its provisions relate to retaliation against a person "who *is* employed" at the time of the alleged retaliation."[1] It is undisputed that Murray-Obertein was not so employed.

---

[1] "A public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief as set forth in paragraph (2) of this subsection within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." OCGA § 45-1-4 (e) (1). Relief under the WBA includes, reinstatement of position held before the retaliation, reinstatement of full fringe benefits and seniority rights, and compensation for lost wages and benefits. See OCGA § 45-1-4 (e) (2) (A)-(E).

8

Thus, in this circumstance, the trial court did not err in granting summary judgment to the Commission.

*Judgment affirmed. McMillian and Mercier, JJ., concur*.