**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2018**

# In the Court of Appeals of Georgia

A17A1984. HARRIS v. CITY OF ATLANTA.                    DO-075

DOYLE, Presiding Judge.

Christopher Harris, the former Watershed Manager for the City of Atlanta's Department of Watershed Management ("DWM"), sued the City, alleging that his termination violated the Georgia Whistleblower Act[1] ("GWA"). The trial court granted summary judgment to the City, and Harris appeals. For the reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. A de

---

[1] OCGA § 45-1-4.

novo standard of review applies to an appeal from a ruling on summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record shows that in late 2011, Harris was promoted by the DWM to Watershed Manager, a position in the unclassified service of the City government that included supervising more than 200 employees. At that time, the DWM was experiencing problems with employees, including theft, productivity issues, and failure to meet required repair service response times. As part of his job, Harris was tasked with identifying and eliminating such problems and improving the DWM's overall performance.

Harris discovered multiple instances of inventory theft and employees over-reporting their work hours, sleeping on the job, using company equipment for personal use, leaving the job during work hours, and engaging in personal activities instead of working. Harris disciplined multiple employees and reported many of these instances to the DWM Commissioner and the Department of Human Resources

---

[2] (Citations and punctuation omitted.) *Freeman v. Smith*, 324 Ga. App. 426, 427 (750 SE2d 739) (2013).

2

("DHR"). He also implemented new management systems, including equipment and materials tracking and electronic time reporting.

Thereafter, in October 2012, the City placed Harris on administrative leave for six days while an internal department and the police department investigated an allegation by multiple employees that he accepted a bribe. The City and police ultimately found no evidence to support the bribery allegation, and the City returned Harris to work with full back pay.

In December 2013, an employee submitted an email complaint to the City, alleging that Harris threatened and intimidated employees, slapped an employee, engaged in favoritism regarding hiring and job assignments, and retaliated against subordinates. In early 2014, Harris changed the DWM work week from five to seven days to decrease overtime abuse. On February 7, 2014, approximately 40 employees protested Harris's actions at City Hall, including his proposed schedule changes, requesting that the City replace him.

DHR began an investigation into the allegations against Harris, and on February 21, 2014, more than 100 DWM employees met with the DHR commissioner and other officials. At the meeting, 68 of Harris's subordinates submitted a signed petition seeking his removal. The City placed Harris on administrative leave the same

3

day. Also on February 21, 2014, Harris wrote a letter to the City's Chief Operating Officer ("COO") stating that DHR was failing to discipline employees for the fraud, abuse, and theft that he had uncovered and reported, and seeking a neutral party evaluation of the recent employee complaints.

Over the next few weeks, DHR conducted an investigation into the complaints, including interviewing and obtaining sworn signed statements from 65 DWM employees. Some statements reported no inappropriate behavior by Harris, while others included wide-ranging allegations against him, including theft, engaging in favoritism with regard to job assignments, showing employees naked photos of a woman Harris identified as a DWM employee, and the frequent use of inappropriate, demeaning, and threatening language. DHR also interviewed Harris on two separate occasions. Immediately before the initial interview, Harris was asked whether the laptop computer he had with him belonged to the City or was his personal computer. Harris twice responded that it was his personal computer, before ultimately admitting that it belonged to the City. At the second interview, Harris submitted character letters from multiple employees offering their support, and he submitted a notebook with documents he believed supported his allegations of employee fraud, waste, and theft.

At the conclusion of the investigation, DHR recommended terminating Harris. In the spring of 2014, at Harris's request, the City retained outside counsel to review his allegations of theft and mismanagement within the DWM; outside counsel met with him and his representative for several hours. In August 2014, the City's COO terminated Harris's employment.

Harris filed suit against the City, alleging that his termination violated the GWA.[3] The City moved for summary judgment, and the trial court granted the motion, applying the analysis set forth in *McDonnell Douglas Corp. v. Green*.[4] In the order, the trial court concluded that Harris failed to establish a prima facie case of retaliation under the GWA because he did not engage in protected activity and because there was no evidence of causation. The court also concluded that Harris failed to demonstrate that the City's reasons for terminating him were pretextual. This appeal followed.

---

[3] Harris also alleged that the City violated his due process rights by failing to provide him with a name-clearing hearing. The trial court granted summary judgment to the City on this claim. Harris does not challenge that ruling on appeal, and we do not address it.

[4] 411 U. S. 792, 802-803 (II) (93 SCt 1817, 36 LE2d 668) (1973).

The GWA prohibits public employers from retaliating "against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity."[5] "Retaliation" is defined as

> the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.[6]

We apply the *McDonnell Douglas* burden-shifting analysis to whistleblower claims brought pursuant to the GWA.[7]

> Under the *McDonnell Douglas* framework, the plaintiff must first make a prima facie case of retaliation. If the plaintiff makes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. If the

---

[5] OCGA § 45-1-4 (d) (2).

[6] OCGA § 45-1-4 (a) (5).

[7] See *Tuohy v. City of Atlanta*, 331 Ga. App. 846, 848 (1) (771 SE2d 501) (2015). "We find the Eleventh Circuit cases using the *McDonnell Douglas* framework to analyze federal discrimination and retaliation cases persuasive." Id. at 851, n.6.

employer successfully meets this burden of production, then the burden shifts back to the plaintiff to show that each proffered reason was pretext.[8]

1. *Prima facie case of retaliation.* "Because we hold below that [Harris] has failed to satisfy his burden of establishing that the proffered reason for his termination was pretextual, we need not address whether he established a prima facie case of retaliation."[9]

2. *Burden-shifting analysis.* "'Assuming that [Harris] had established a prima facie case, the burden of production shifts to the City to articulate some legitimate, nondiscriminatory reason for the employment decision.'"[10]

(a) *The City's burden of production to articulate legitimate, non-discriminatory reasons for the termination.* The City's COO stated that he made the decision to terminate Harris based upon DHR's findings that employees reported that Harris was threatening and abusive to subordinates, Harris showed nude photographs

---

[8] (Punctuation omitted.) Id. at 849 (1), quoting *Adams v. City of Montgomery*, 569 Fed. Appx. 769, 772 (11th Cir. 2014) (unpublished opinion in Case No. 13-15066).

[9] *Tuohy*, 331 Ga. App. at 850 (2).

[10] Id. at 850 (3), citing *Adams*, 569 Fed. Appx. at 772.

of an employee to other employees, and Harris was untruthful with DHR during the investigation.

"The employer need not persuade the court that its proffered reasons are legitimate, as its burden is merely one of production, not proof. This intermediate burden is exceedingly light."[11] Here, statements and affidavits in the record support DHR's findings, and the reasons cited by the COO constitute "legitimate, nondiscriminatory reason[s] for [Harris's] termination."[12]

(b) *Harris's burden to show pretext*. Because the City met its burden to proffer a nondiscriminatory reason for the termination, the burden shifts to Harris to demonstrate that each proffered reason was pretextual.[13]

> [P]retext is established by a direct showing that a discriminatory reason more likely motivated the defendant or by an indirect showing that the defendant's explanation is not credible. To avoid summary judgment, a plaintiff must present significantly probative evidence on

---

[11] (Emphasis omitted.) *Tuohy*, 331 Ga. App. at 851 (3) (a), quoting *Burgos-Stefanelli v. United States Dept. of Homeland Security*, 410 Fed. Appx. 243, 247 (III) (11th Cir. 2011) (unpublished opinion in Case No. 10-12756).

[12] *Tuohy*, 331 Ga. App. at 851 (3) (a).

[13] See id. at 851 (3) (b); *Adams*, 569 Fed. Appx. at 772.

the issue of pretext because the plaintiff has the burden of establishing pretext.[14]

A defendant's given

> reason is not pretextual unless it is shown both that the reason was false, and that discrimination or retaliation was the real reason. If the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason, or showing that the decision was based on erroneous facts.[15]

Here, Harris argues that his termination was pretextual because the City failed to specify the employee complaints and his untruthful statements about the City's computer as the reasons for his termination at the time he was fired, instead telling him that his "services were no longer needed." But this does not "present a basis for

---

[14] (Punctuation omitted.) *Tuohy*, 331 Ga. App. at 851 (3) (b), quoting *Bailey v. Stonecrest Condo. Assn.*, 304 Ga. App. 484, 491 (1) (b) (696 SE2d 462) (2010).

[15] (Punctuation and emphasis omitted.) *Tuohy*, 331 Ga. App. at 852 (3) (b), quoting *Tarmas v. Secretary of the Navy*, 433 Fed. Appx. 754, 761 (III) (B) (11th Cir. 2011) (unpublished opinion in Case No. 10-15370).

the disbelief of the City's overall justification," nor does it constitute "a direct showing that a discriminatory reason more likely motivated the City."[16]

Further, Harris has failed to rebut the City's evidence that dozens of employees made the complaints and allegations about Harris that DHR gathered during its investigation and that he twice lied about possessing the City's laptop computer. Thus, Harris's arguments "are insufficient to raise a genuine issue of material fact regarding whether the City's reasons for his termination were a pretext for retaliation. . . . For this reason, the trial court did not err [by] granting the City's motion for summary judgment. . . ."[17]

*Judgment affirmed. Miller, P. J., and Reese, J., concur*.

---

[16] (Punctuation omitted.) *Tuohy*, 331 Ga. App. at 852 (3) (b), quoting *Blockum v. Fieldale Farms Corp.*, 275 Ga. 798, 802 (4) (573 SE2d 36) (2002).

[17] (Citations omitted.) *Tuohy*, 331 Ga. App. at 853 (3) (b), citing *Crawford v. City of Fairburn*, 482 F3d 1305, 1309 (III) (11th Cir. 2007) (affirming grant of summary judgment to the employer because the employee failed to rebut the reasons given for termination); *Tiggs-Vaughn v. Tuscaloosa Housing Auth.*, 385 Fed. Appx. 919, 923 (II) (11th Cir. 2010) (unpublished opinion in Case No. 09-15485) (employee's pretext argument insufficient to survive summary judgment because she failed to rebut her employer's claim that she was a disruptive employee).