**FIRST DIVISION**
**BARNES, P. J.,**
**MILLER, P.J., and GOBEIL, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 7, 2022**

# In the Court of Appeals of Georgia

A21A1754. THOMPSON v. DEKALB COUNTY, GEORGIA.

GOBEIL, Judge.

In this Georgia Whistleblower Act[1] ("GWA") action filed by Mark A. Thompson, the trial court granted summary judgment to Thompson's former employer, DeKalb County. Thompson appeals, contending that the trial court erred in finding Thompson did not make a prima facia case of whistleblower retaliation , in accepting DeKalb County's reason for terminating Thompson as true, and in failing to consider his evidence of pretext. Thompson also argues that the trial court erred by resolving factual disputes and failing to view the evidence in the light most favorable to Thompson; and in finding that his disclosures were not protected because they were "widely known." For the reasons that follow, we affirm.

---

[1] OCGA § 45-1-4.

On appeal from the grant of summary judgment, this court applies a de novo standard of review. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Tuohy v. City of Atlanta*, 331 Ga. App. 846, 846 (771 SE2d 501) (2015) (citations omitted).

So viewed, the record shows that Thompson began working for the DeKalb County Law Department in 2003. From 2010 through 2014, he worked as a senior assistant county attorney. In 2010, County Attorney Lisa Chang assigned Thompson to represent DeKalb County in a breach of contract action filed in DeKalb County Superior Court by Paul Champion d/b/a Champion Tree Service, asserting that it was not paid for all work performed for the county (the "Champion litigation").[2]

During the course of representing DeKalb County in the Champion litigation, Thompson allegedly discovered that Champion overbilled the county, did not perform work it claimed to have performed, and engaged in acts of fraud. Thompson also

___

[2] Both the Champion litigation and the underlying GWA action were filed in the Superior Court of DeKalb County. For ease of reference, when referring to proceedings in the Champion litigation, we will refer to the "superior court." When referring to proceedings in the underlying GWA action, we will refer to the "trial court."

found information linking a county employee to suspicious acts that appeared fraudulent. Thompson notified Chang of his findings; and, although she initially dissuaded him from further disclosures, he eventually reported the alleged criminal activities to the DeKalb County District Attorney. In January 2012, a special purpose grand jury was empaneled to investigate alleged corruption in DeKalb County. Thompson testified before the grand jury in February 2012 about his findings regarding the alleged criminal activities relating to the Champion litigation. The grand jury subsequently issued a report of its findings in January 2013.

During his investigation into the Champion matter, Thompson discovered what he considered to be flaws in DeKalb County's bidding and contract formation process, which he believed made it easier for vendors to defraud the county. Specifically, he believed DeKalb County failed to adhere to OCGA § 36-10-1[3] in forming contracts because the contracts were not entered on the County Commission meeting minutes.

In March 2013, Overtis Brantley became the interim County Attorney and ultimately the permanent County Attorney. When she arrived, she met one-on-one

---

[3] OCGA § 36-10-1 provides: "All contracts entered into by the county governing authority with other persons in behalf of the county shall be in writing and entered on its minutes."

3

with every attorney in the law department. In their introductory meeting, Brantley discussed the Champion litigation with Thompson. Brantley described Thompson's synopsis of the case as " a little incoherent," but she "could tell it was something he was passionate about." Thompson explained to Brantley that he had disclosed the corruption to the District Attorney and testified before the special purpose grand jury.

Thompson and Brantley had several tense interactions. For instance, Thompson thought that Brantley was mocking him when discussing the criminal activities, particularly when she responded that "people steal and people lie." At another meeting, when Thompson told Brantley that Champion was demanding nearly $900,000, she responded "that's Monopoly money." To which Thompson replied "No. That's taxpayer money."

In 2013, Thompson wanted to raise the defense that the contract with Champion did not comply with Georgia law.[4] After being given permission, Thompson filed an amended answer denying that a contract existed. The superior court subsequently ruled that the contract was valid and enforceable.

---

[4] According to Thompson, he wanted to raise the contract defense earlier, but Chang refused, informing him that denying the validity of the Champion contract could jeopardize every contract in DeKalb County.

4

Thompson requested that outside counsel be appointed to assist him with the Champion litigation, and Brantley agreed in mid-2014 to retain Anita Thomas. DeKalb County filed a motion for summary judgment in the Champion litigation, asserting, in part, that it was immune from the suit based on sovereign immunity. The superior court denied DeKalb County's motion, and the county appealed. Brantley and Thompson disagreed as to what arguments to include on appeal. Thompson wanted to emphasize the lack of a valid contract and alleged corruption related to the Champion litigation because he thought evidence of Champion's wrongdoing provided "a good reason for [DeKalb County] to not honor [the] contract." However, Brantley and Thompson's managing attorney, Laura Johnson, sought to focus the appeal on the purely legal issue of sovereign immunity to ensure a "clean record." Thompson ultimately was critical of Thomas's work, writing in an e-mail that outside counsel "ha[d] obviously never prepared a motion for summary judgment before." After the decision was made to exclude the extraneous criminal allegations from the appeal of the sovereign immunity issue, in November 2014, Thompson told Johnson that he wished to withdraw from the Champion litigation.

Brantley was extremely upset about Thompson's decision to withdraw from the Champion litigation. She believed his continued argument as to what to include in the

5

appeal (despite her stated strategic reasons for the decision) undermined her authority as the final decision-maker concerning legal strategy. In a December 2014 meeting, Brantley told Thompson that he was not a "team player," that he acted like "a child" and "the smartest person in the room," and that his behavior was "ugly." Brantley believed Thompson, as an at-will employee, could be fired for withdrawing from the Champion litigation as insubordination. Johnson urged Brantley not to fire Thompson, but to let him withdraw, in the hopes that if he worked on matters other than the Champion litigation, "his behavior might revert to something within an acceptable range[.]"

In February 2015, this Court dismissed the appeal from the denial of the motion for summary judgment for DeKalb County's failure to follow the interlocutory appeal procedure (OCGA § 5-6-34 (b)).[5] Champion then moved for attorney fees against DeKalb County and Thompson individually. Champion accused Thompson of presenting false information to the superior court regarding the work Champion performed and delaying the proceedings. Thompson wanted to respond to the motion for fees by naming the DeKalb County employee who had allegedly given him the

[5] See Case No. A15A0972 (decided Feb. 10, 2015).

6

false information, but Johnson disagreed with this strategy, as she did not believe it would help Thompson or the County.

On May 29, 2015, Brantley, Thompson, Johnson, and Thomas met to discuss the motion for attorney fees. At the meeting, Thompson became upset and behaved in a way that Brantley considered unprofessional. At the end of that meeting, Brantley told Thompson to look for another job. About three weeks later and after another meeting, Brantley sent Thompson a termination letter, in which, among other concerns, she stated that Thompson "responded to stressful litigation situations in a hostile and arrogant manner when interacting with me and others within this office during recent months[,]" and "[t]his type of behavior is not consistent with the team environment I have been working to build in the law department." The letter gave Thompson the option to resign, but he declined, and his employment was terminated in June 2015.

In May 2016, Thompson filed a civil action in the trial court alleging he was terminated by DeKalb County in violation of the GWA. Thompson pointed to his actions and disclosures pertaining to the Champion litigation and associated corruption as protected activities and asserted that DeKalb County unlawfully retaliated against him for those actions. He then filed an amended complaint

containing counts for unlawful breach of the GWA, attorney fees pursuant to the GWA, various theories of unlawful termination based on race, and age discrimination under the Age Discrimination in Employment Act.

Because these additional claims presented federal questions, the case was removed to the United States District Court for the Northern District of Georgia in June 2017. Thereafter, DeKalb County moved for summary judgment. The federal magistrate judge issued a Final Report and Recommendation, recommending that summary judgment be granted on all counts of the complaint. After review of the report, the district court judge granted summary judgment to DeKalb County on each of Thompson's federal claims, but declined to exercise supplemental jurisdiction over the state GWA claims, which were remanded to the trial court.

On remand, DeKalb County again filed for summary judgment on the GWA claims. The trial court subsequently granted summary judgment to DeKalb County. The trial court found that either the temporal proximity between DeKalb County's knowledge of protected activities and the adverse employment action was not close enough to be sufficient evidence of causality, or the activities were merely litigation strategy disagreements and not disclosures of violations of laws, rules, or regulations. Further, the trial court noted that the corruption unearthed during the Champion

8

litigation was widely known and therefore not covered by the GWA. Finally, the trial court found that Thompson failed to show that the reasons for his termination were pretextual. This appeal followed.

1. In related claims of error, Thompson asserts that the trial court erred by (a) concluding that he failed to establish a prima facie case of whistleblower retaliation, (b) accepting DeKalb County's reason for terminating Thompson as true, and (c) disregarding his evidence of pretext. We disagree.

The GWA prohibits a public employer from retaliating against a public employee for disclosing "a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency." OCGA § 45-1-4 (d) (2). Retaliation refers to the "discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment[.]" OCGA § 45-1-4 (a) (5). An employee asserting a claim under the GWA must show that there is some causal relation between the employer's retaliation and the employee's disclosure of the employer's violation or noncompliance. *Murray-Obertein v. Ga. Govt. Transparency & Campaign Finance Comm.*, 344 Ga. App. 677, 681 (812 SE2d 28) (2018).

9

In analyzing claims brought pursuant to the GWA, we apply the burden-shifting analysis set forth in *McDonnel Douglas Corp. v. Green*, 411 U. S. 792, 802-803 (II) (931 SCt 1817, 36 LE2d 668) (1973). See *Tuohy*, 331 Ga. App. at 849 (1), 851 (3) (a) n. 6 ("We find the Eleventh Circuit cases using the *McDonnell Douglas* framework to analyze federal discrimination and retaliation cases persuasive" in analyzing whistleblower claims brought pursuant to the GWA.).

> Under the *McDonnell Douglas* framework, the plaintiff must first make a prima facie case of retaliation. If the plaintiff makes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. If the employer successfully meets this burden of production, then the burden shifts back to the plaintiff to show that each proffered reason was pretext.

*Tuohy*, 331 Ga. App. at 849-850 (1) (citations and punctuation omitted).

(a) *Thompson's prima facie case of retaliation*. Thompson contends he engaged in the following actions that should be considered protected activity under the GWA: (1) his uncovering fraudulent and criminal activities concerning the Champion litigation, his reporting this to the District Attorney, and his testifying to the grand jury about it; (2) his discovery and disclosure to his supervisors that DeKalb County's contracting procedures were illegal under Georgia law in a way that

10

made fraud easier; (3) his public disclosure of evidence of fraud and contracting illegality in court pleadings; (4) his withdrawal from the Champion litigation when his supervisors declined to include the evidence of corruption in the appeal; and (5) his attempt to expose another county employee who lied during the course of the investigation and his supervisors' refusal to include the employee's name in court pleadings.

As an initial matter, the trial court ruled that Thompson failed to establish that the first three asserted acts of whistleblower activity were causally connected to his employment termination because he did not demonstrate a close temporal proximity between DeKalb County's awareness of his protected activity and the adverse employment action. In *Freeman v. Smith*, we recognized that "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." 324 Ga. App. 426, 431 (1) (750 SE2d 739) (2013) (citation and punctuation omitted), overruled on other grounds by *Frankin v. Pitts*, 349 Ga. App. 544, 552 (1) (c) (826 SE2d 427) (2019). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" to show a causal connection. *Freeman*, 324 Ga. App. at 431 (1) (citation and

11

punctuation omitted). Here, the first three allegedly covered disclosures occurred between 2010 and 2014, and Thompson was not fired until 2015. The lack of temporal proximity between the first three allegedly protected disclosures, without more, was too great to show causation, and Thompson's "complaint of retaliation fails as a matter of law." Id. (citation and punctuation omitted).

Even assuming that Thompson had established a prima facie case for any of the allegedly protected disclosures, the burden of production shifts to DeKalb County to articulate some legitimate, nondiscriminatory reason for the employment decision, which it provided. See *Tuohy*, 331 Ga. App. at 850 (2) (noting that courts "need not address whether [employee] established a prima facie case of retaliation" where employee "failed to satisfy his burden of establishing that the proffered reason for his termination was pretextual").

(b) *DeKalb County's burden of production to articulate legitimate, non-discriminatory reasons for the termination*. DeKalb County stated that it made the decision to terminate Thompson because of a course of conduct in which he was hostile with supervisors and in disagreeing with strategy decisions. And, DeKalb County further offered that his arrogant behavior undermined the team environment Brantley was trying to foster in the law department.

12

"The employer need not persuade the court that its proffered reasons are legitimate, as its burden is merely one of production, not proof. This intermediate burden is exceedingly light." *Harris v. City of Atlanta*, 345 Ga. App. 375, 378 (2) (a) (813 SE2d 420) (2018) (citation and punctuation omitted). Here, statements and affidavits in the record, specifically the affidavits of Thompson, Brantley, and Johnson, support DeKalb County's reasons and constitute "legitimate, nondiscriminatory reason[s] for [Thompson's] termination." Id. (citation and punctuation omitted).

(c) *Thompson's burden to show pretext*. Because DeKalb County met its burden to proffer a nondiscriminatory reason for the termination, the burden shifts to Thompson to demonstrate that each proffered reason was pretextual.

> To avoid summary judgment [on a GWA claim], a plaintiff must present significantly probative evidence on the issue of pretext because the plaintiff has the burden of establishing pretext. A defendant's given reason is not pretextual unless it is shown both that the reason was false, and that discrimination or retaliation was the real reason. If the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason, or showing that the decision was based on erroneous facts.

*Harris*, 345 Ga. App. at 378-379 (2) (b) (citations, punctuation, and footnotes omitted).

Here, DeKalb County presented evidence that Thompson's separation from his employment was the result of his "hostile and arrogant" behavior toward his supervisor and other employees. "Thus, it was incumbent on [Thompson] to present evidence to establish the existence of a fact issue, which could establish this stated legal reason was merely pretext for dismissing [him] based on [his] whistleblowing activity." *Caldon v. Bd. of Regents of Univ. System of Ga.*, 311 Ga. App. 155, 159 (715 SE2d 487) (2011). Thompson does not contest that he informed Johnson and Brantley that their decision regarding what information to include in the appeal was "dumb." Nor does he challenge DeKalb County's evidence that he disagreed with Brantley's and Johnson's proposed litigation strategy. Indeed, Brantley thought that Thompson's continued disagreement with her on the Champion litigation appeal strategy (despite her asserted reasons for the strategy) "was the greatest amount of disrespect that [Thompson] could have given [Brantley]" because she alone had final decision-making authority on matters of legal strategy. Notably, when asked about his termination letter, Thompson acknowledged that Brantley had informed him that he acted disrespectfully toward her. Instead of meeting DeKalb County's stated

14

reasons for his employment termination "head on," he instead "quarrel[s] with the wisdom of [those] reasons." *Harris*, 345 Ga. App. at 379 (2) (b) (citation and punctuation omitted).

In sum, Thompson's failure to rebut the county's direct evidence that he was terminated for the reasons stated in the termination letter is insufficient to create an issue of fact with regard to pretext. Accordingly, because Thompson "has failed to establish that a genuine issue of material fact existed as to the reason for [his] termination, we affirm the trial court's grant of summary judgment to [ ] [DeKalb County]." *Caldon*, 311 Ga. App. at 160.

2. Thompson also argues that the trial court failed to weigh the evidence in his favor and impermissibly resolved factual disputes. We disagree with Thompson's characterization of the trial court's order. As set forth above, DeKalb County's proffered reason for termination is supported by the record, even when viewed most favorably to Thompson. Moreover, Thompson has failed to point to evidence that would establish a fact question for the County's motive, and has admitted to the behavior that served as the basis for his employment termination. See *Anglin v. Harris*, 244 Ga. App. 140, 142 (1) (534 SE2d 874) (2000) ("A shadowy semblance

15

of an issue is not enough to defeat the motion for summary judgment.") (citation and punctuation omitted). We therefore find no merit to this claim of error.

3. Finally, Thompson argues that the trial court erred by ruling that disclosures of widely known information is not covered by the GWA. However, based on our holding in Division 1, supra, that Thompson failed to demonstrate a triable issue as to pretext, we need not address this claim of error.

*Judgment affirmed. Barnes, P. J., and Miller, P.J., concur*.