**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 29, 2025**

# In the Court of Appeals of Georgia

A25A0177. A25A0178. SANDRA WARD-POAG v. FULTON COUNTY; and vice versa.

LAND, Judge.

This is the second appearance of this case concerning a retaliation claim by Sandra Ward-Poag and Lisa Rushin (collectively, "Plaintiffs") under the Georgia Whistleblower Act ("GWA"). In Case No. A25A0177, Ward-Poag appeals from the trial court's January 26, 2024 order granting Fulton County's motion to amend a consolidated pretrial order, which removed the issue of damages from the jury's determination.[1] In Case No. A25A0178, Fulton County appeals from the trial court's February 28, 2023 order denying its motion for summary judgment on Plaintiffs'

---

[1] This appeal arises from our grant of Ward-Poag's application for interlocutory appeal.

claim under the GWA. Because we conclude that the trial court erred in denying summary judgment in favor of Fulton County, we reverse in Case No. A25A0178 and dismiss Case No. A25A0177 as moot.

*Case No. A25A0178*

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. On appeal from the grant [or denial] of summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant."

(Citations and punctuation omitted.) *Wyatt v. Metro. Atlanta Rapid Transit Auth.*, 367 Ga. App. 453, 453 (886 SE2d 832) (2023). Where the movant for summary judgment is the "defendant who will not bear the burden of proof at trial," the movant "need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any

essential element of the nonmoving party's case." (Citation and punctuation omitted.) *Houston Hosp., Inc. v. Felder*, 351 Ga. App. 394, 394 (829 SE2d 182) (2019).

So viewed, the record shows that Plaintiffs are two former Fulton County employees whose primary responsibilities involved the management and operations of Wolf Creek Amphitheater (the "WCA"), an outdoor concert and event venue owned by Fulton County. In April 2012, Rushin was working as the assistant to the county manager, where she oversaw seven departments, including the WCA, and chaired the Fulton County Employee Wellness Committee (the "Wellness Committee"), which oversaw the County finance department's employee wellness program. In 2012, the County hired Ward-Poag as the event manager for the WCA. Rushin, Ward-Poag, and a third employee were the only three County employees involved in the day-to-day operations of the WCA.

In 2015, Marvin S. Arrington, Jr., took office as the District 5 Commissioner of the Fulton County Board of Commissioners ("BOC"). In April 2015, the County hired a new county manager, Dick Anderson. In October 2015, Anderson hired Todd Long ("COO Long") to fill the newly created position of chief operating officer. As a result of COO Long's hire, Rushin's reporting structure and title changed; she now

reported to COO Long as assistant to the chief operating officer. Eventually, Rushin's job duties were modified such that she oversaw only the WCA, but she did not suffer any pay cut or demotion in her classification. Ward-Poag continued to report to Rushin on items related to WCA but ultimately reported to the County's director of arts & culture, Lionell Thomas ("Director Thomas").

According to Plaintiffs, from September 2015 to August 2016, Commissioner Arrington attempted to use WCA for his own private gain, which included the commissioner making repeated demands on Plaintiffs to reserve WCA for his own concerts; selling items at WCA concerts; storing merchandise, alcohol, and campaign literature on WCA premises; taking control of 90-100 tickets to the WCA's sky box and 30 parking spaces at the facility; demanding a vendor not be charged for a vending spot and cleanup fee; producing counterfeit "all access" passes to concerts; and assisting an organization to solicit funds on behalf of WCA and failing to remit those funds to Fulton County. Plaintiffs rejected the commissioner's requests for assistance with these items, and as a result, the commissioner began to verbally and emotionally abuse them. According to Plaintiffs, they "repeatedly disclos[ed]" Commissioner Arrington's "unlawful acts" and "abusive behavior" to Anderson and COO Long.

In November 2015, Plaintiffs made additional disclosures to the chief of staff for the chairman of the BOC about Commissioner Arrington, who in turn informed the chairman of the BOC of those disclosures At a 2015 holiday event, the chairman of the BOC told Ward-Poag to "hang in there."

*The WCA and Wellness Committee Audits and Plaintiffs' Terminations.*

In early 2016 Commissioner Arrington "informally demanded" an audit of WCA[2] and on June 29, 2016, the commissioner made a formal request with the office of internal audit to audit WCA's operations and finances. Although the WCA audit did not go through the audit committee for approval, the manager of the audit department testified that an audit can be requested by "any board member, the county manager's office, the county attorney's office, [or] any elected official." The audit manager testified that in this case, "the Board [of Commissioners] as a group made a decision that" the WCA audit would be conducted. During the audit, Commissioner Arrington communicated and met with the County's internal audit team.

---

[2] On March 1, 2016, Commissioner Arrington informed Plaintiffs that because they had "rebuffed" his request for three dates to hold his own concerts at WCA, he was left "with no other opportunity and no other chance but to not sit down with you and just sit down with the county manager." Commissioner Arrington also stated that he "was ready to blow up" Plaintiffs' building when they told them there were no available dates for a concert.

Also in 2016, and at the request of the county's finance director, the office of county auditor commenced an audit of the Wellness Program. As a result of the Wellness Program audit, the audit team determined that the Wellness Committee had entered into a management contract with a vendor that was owned by an active employee of the County, that Rushin had instructed that vendor to hire Rushin's relative as a clerk, and that Rushin had increased the vendor's monthly invoice by $1,600 to provide for the clerk's compensation. The Wellness Program audit report concluded that Rushin "may have used her position to satisfy her personal interest" and that this "presented a conflict of interest and displayed a form of nepotism, which also violates the Fulton County Code of Ethics." Before the audit was finalized, the County dissolved the Wellness Committee "as a result of mismanagement" effective December 1, 2016.

On November 14, 2016, the County auditor issued the WCA audit report. The WCA audit report listed numerous findings of misconduct by Rushin and Ward-Poag and identified 25 "significant findings," which were summarized in the conclusion section. Relevant to this appeal, the findings included the following:

> Failure to Properly Safeguard and Segregate Funds; . . . Failure to Deposit Collected Funds; Misappropriation of Funds; . . .

Circumvention of the Procurement Process; . . . Failure to Request Proper Authorization; Noncompliance with Written Agreements; . . . Exposing Fulton County to Unnecessary Risks; . . . Issuance of Tickets Beyond Facility Capacity; Excessive Issuance of Complimentary Tickets; [and] Involvement of Non-County Employees in WCA Operations[.]

Anderson, the county manager, issued a response characterizing the audit's findings as "disturbing."

On February 3, 2017, Fulton County terminated Rushin and Ward-Poag's employment.[3] Rushin's letter of termination, signed by COO Long, stated that her termination was "for cause" based on findings that Rushin "repeatedly violated County policies with respect to the leadership role that [she] held" at WCA and the Wellness Committee. The letter listed several examples of "conduct and performance-based issues" consistent with the findings of the WCA and Employee Wellness Program audits. When Rushin met with COO Long, he told her that her termination was based on the WCA and Wellness Program audits. Long testified that Rushin was terminated due to findings from both the WCA and Wellness Program

---

[3] The third employee involved in day-to-day operations of WCA was also terminated on February 3, 2017.

7

audits. Rushin denies the allegations of wrongdoing in the WCA and Wellness Program audits.

Ward-Poag's termination letter, signed by Director Thomas, stated that her termination was "for cause" based on findings that Ward-Poag had "used [her] position at [WCA] for personal gain; actively circumvented County policies in, among other ways, use of personal, unsecure email for County business; and when questioned by superiors, [was] less than forthcoming in [her] explanations regarding these matters." The letter listed several examples of "conduct and performance-based issues" consistent with the findings of the WCA audit. Director Thomas testified that he made the decision to terminate Ward-Poag solely "because of the misconduct and performance issues" revealed by the WCA audit. Ward-Poag denies the allegations of wrongdoing in the WCA audit.

*Plaintiffs' Lawsuit.*

In October 2016, prior to the completion of the WCA and Wellness Program audits and their terminations, Plaintiffs commenced the current whistleblower lawsuit. In their complaint, Plaintiffs alleged that they made protected disclosures to

8

Anderson, COO Long, and members of the Fulton County Attorney's Office "[b]eginning in or around September 2015, and continuing to September 2016."

On September 5, 2017, Fulton County moved for summary judgment on Rushin and Ward-Poag's claims for violation of the GWA (Count I) and defamation (Count II). Fulton County also argued that Ward-Poag was judicially estopped from pursuing any of her claims. The trial court entered an order granting Fulton County's motion for summary judgment "as to any defamation claims" and as to Ward-Poag on all claims based on judicial estopped. In *Ward-Poag v. Fulton County*, 351 Ga. App. 325 (830 SE2d 799) (2019) ("*Ward-Poag I*"), we held that the superior court erred in its application of judicial estoppel and accordingly reversed the grant of summary judgment in favor of Fulton County on Ward-Poag's whistleblower claims.[4] Id. at 331 (1). That decision was affirmed by our Supreme Court in *Fulton County v. Ward-Poag*, 310 Ga. 289 (849 SE2d 465) (2020). See id. at 289 (affirming "the Court of Appeals's ultimate conclusion that the superior court abused its discretion in applying the [judicial estoppel] doctrine at this procedural stage because there are genuine issues of material fact that preclude summary judgment to Fulton County").

---

[4] Plaintiffs did not appeal the grant of summary judgment on their defamation claim. See *Ward-Poag I*, 351 Ga. App. at 325.

On remand, the trial court heard argument on Fulton County's motion for summary judgment with respect to Plaintiffs' sole remaining claim for violation of the GWA. During the January 12, 2022 hearing, the trial court stated that it would deny the motion but did not issue a written order until over a year later, on February 28, 2023.

1. Fulton County argues that the trial court erred in denying its motion for summary judgment because there is no evidence in the record to create a jury issue on whether Plaintiffs made a prima facie case of retaliation. Fulton County also argues that it has articulated a legitimate non-discriminatory reason for Plaintiffs' terminations and that there is no evidence in the record to create a jury issue that the County's proffered reason for termination was pretextual. Because we agree that Plaintiffs are unable to show that the County's proffered reason for their terminations was pretextual, we reverse the trial court's denial of the County's motion for summary judgment.

The GWA prohibits a public employer from retaliating against a public employee for "disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency," OCGA § 45-1-4 (d) (2), or

"for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." OCGA § 45-1-4 (d) (3). Prohibited retaliation includes "the discharge, suspension, or demotion" of the employee "or any other adverse employment action" taken against the employee "in the terms or conditions of employment." OCGA § 45-1-4 (a) (5). To succeed on a GWA claim, the public employee must show that "(1) he was employed by a public employer[5]; (2) he made a protected disclosure or objection; (3) he suffered an adverse employment action such as being discharged; and (4) there is some causal relationship between the protected activity and the adverse employment action." (Citation and punctuation omitted.) *Wyatt*, 367 Ga. App. at 458.

(a) *Adverse Employment Action.* As an initial matter, Fulton County argues that the only adverse employment action suffered by Plaintiffs was their termination of employment. We agree.

Prohibited retaliation includes "the discharge, suspension, or demotion . . . or any other adverse employment action taken by a public employer against a public

---

[5] There is no dispute that Plaintiffs were employed by a public employer.

11

employee in the terms or conditions of employment . . . ." OCGA § 45-1-4 (a) (5). This Court has previously held that the phrase "any other adverse employment action" "should be interpreted to mean employment action analogous to or of a similar kind or class as discharge, suspension, or demotion." *Franklin v. Pitts*, 349 Ga. App. 544, 554 (1) (d) (826 SE2d 427) (2019). "A change in an employee's work assignments, if not accompanied by a tangible harm or some unusual circumstance, is generally not sufficient to constitute an adverse employment action." (Citation and punctuation omitted.) Id. at 556 (1) (e).

Plaintiffs argue that they were required to clean out a storage closet, subjected to "unfair audits" and allegations of criminal acts relating to their employment, and were ultimately terminated. While they were in fact terminated, there is no evidence in the record showing that either of them was ever demoted or experienced a pay cut prior to their termination. While being told to clean out a closet might be taken by some as an affront or insult, it is not tantamount to a demotion and does not qualify under the circumstances of this case as an adverse employment action under the GWA.

Similarly, Rushin's contention that her job duties changed after her disclosures is unavailing, as the complained of changes did not result in a change of pay, were not tantamount to a demotion, and were not accompanied by any tangible harm or other unusual circumstance that would qualify it as an adverse employment action. Rushin's characterization of her new job duties as "limit[ing] [her] career trajectory" is precisely "the kind of subjective, conclusory allegation that should not be considered when determining whether an adverse employment action has occurred." *Franklin*, 349 Ga. App. at 556 (1) (f). See also *Burlington Northern & Santa Fe R. Co. v. White*, 548 U. S. 53, 67-68 (126 SCt 2405, 165 LE2d 345) (2006) (actionable employer conduct must be "significant" rather than "trivial").

For these reasons, we hold, as a matter of law, that the change of Plaintiffs' work assignments and responsibilities following their disclosures do not qualify as adverse employment actions under OCGA § 45-1-4 (a) (5). See id. at 556 (1) (f).

As to the Plaintiffs' contention that they were subjected to "unfair audits" and allegations of criminal conduct relating to their employment, an audit and its findings are not "analogous to or of a similar kind or class as discharge, suspension, or demotion." See *Franklin*, 349 Ga. App. at 554 (1) (d). Accordingly, we hold, as a

13

matter of law, that the audits and resulting allegations of criminal conduct do not qualify as adverse employment actions.

As a result of our holdings set forth above, we are left only with the question of whether there is evidence in the record that creates a genuine issue of material fact in support of Plaintiffs' claims that they were terminated in retaliation for their protected disclosures. The evidence in the record does not contain such evidence and in fact shows the contrary.

(b) *Fulton County's Legitimate, Nondiscriminatory Reason for the Employment Decision.* Even if we were to assume that Plaintiffs have established a prima facie case of retaliation for allegedly protected disclosures, the evidence before us shows that Fulton County has satisfied its burden of articulating a legitimate, nondiscriminatory reason for the terminations. In short, the evidence reveals that Plaintiffs were terminated as a result of the audits' findings of their misconduct in relation to their employment, a reason that is both legitimate and non-discriminatory.

> When analyzing claims brought under the GWA, we apply the same burden-shifting analysis established by the United States Supreme Court for retaliation cases brought under Title VII of the Civil Rights Act of 1964. See *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802-803 (II) (93 SCt 1817, 36 LE2d 668) (1973). Under this framework, the plaintiff

14

> must first make a prima facie case of retaliation. If the plaintiff makes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment decision. If the employer successfully meets this burden of production, then the burden shifts back to the plaintiff to show that each proffered reason was pretext.

(Citation and punctuation omitted.) *Wyatt*, 367 Ga. App. at 459. "The employer need not persuade the court that its proffered reasons are legitimate, as its burden is merely one of production, not proof. This intermediate burden is exceedingly light." (Citation and punctuation omitted.) *Harris v. City of Atlanta*, 345 Ga. App. 375, 378 (2) (a) (813 SE2d 420) (2018). Here, the findings of the audits constitute "legitimate nondiscriminatory reasons for [Plaintiffs'] termination." (Citation and punctuation omitted.) Id.

(c) *Pretext.* Because Fulton County met its burden to articulate legitimate and nondiscriminatory reasons for the terminations, the burden shifts to Plaintiffs to demonstrate that each proffered reason was pretextual. Plaintiffs have failed to meet this burden.

> A plaintiff asserting a claim under the [GWA] establishes pretext by a direct showing that a discriminatory reason more likely motivated the

defendant or by an indirect showing that the defendant's explanation is not credible. To avoid summary judgment, a plaintiff must present significantly probative evidence on the issue of pretext because the plaintiff has the burden of establishing pretext. A defendant's given reason *is not pretextual unless it is shown both that the reason was false, and that discrimination or retaliation was the real reason.* If the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason, or showing that the decision was based on erroneous facts.

(Emphasis supplied.) *Wyatt*, 367 Ga. App. at 464 (2) (b). When evaluating whether a plaintiff has shown pretext, "the intervening discovery of employee misconduct can sever the causal inference created by close temporal proximity." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1309 (III) (A) (11th Cir. 2023).

Here, Fulton County presented evidence that Rushin's termination resulted from the audits' findings that she "repeatedly violated County policies with respect to the leadership role that [she] held" at WCA and the Wellness Committee. Fulton County also presented evidence that Ward-Poag's termination resulted from the WCA audit's findings that she "used [her] position at [WCA] for personal gain; actively circumvented County policies in, among other ways, use of personal,

unsecure email for County business; and when questioned by superiors, [was] less than forthcoming in [her] explanations regarding these matters." Because these findings gave the County legitimate, nondiscriminatory reasons for terminating both Plaintiffs, "it was incumbent on [Plaintiffs] to present evidence to establish the existence of a fact issue, which could establish that this stated legal reason was merely pretext for dismissing [them] based on [their] whistleblowing activity." (Citation and punctuation omitted.) *Thompson v. Dekalb Cty.*, 363 Ga. App. 61, 68 (1) (c) (870 SE2d 558) (2022). Plaintiffs have failed to present such evidence.

Plaintiffs argue that the County's proffered reason for their terminations was pretextual because the County (1) waited five months to terminate Plaintiffs after receiving the results of the WCA audit; (2) departed from its usual business procedure in initiating the WCA audit by failing to have it go through Fulton County's audit committee; (3) departed from its usual business practice in conducting the WCA and Wellness Program audits; (4) failed to have a reasonably objective standard for evaluating Rushin's job duties and responsibilities on the Wellness Committee; (5) "failed to apply the same treatment to individuals in like audits"; (6) "failed to investigate" Plaintiffs' disclosures about Commissioner Arrington as part of the WCA

17

audit; (7) did not provide training and policies for Plaintiffs; and (8) used the audits as a "bargaining tool" in Plaintiffs' lawsuit. In short, Plaintiffs take issue with how these audits were conducted and used.

However, any purported deficiencies as to how the audit was conducted, even if true, "do not present a basis for the disbelief of the [County's] *overall* justification." (Citation and punctuation omitted; emphasis in original.) *Tuohy v. City of Atlanta*, 331 Ga. App. 846, 852 (3) (b) (771 SE2d 501) (2015). Here, the County's justification for terminating Plaintiffs' employment arose directly from the findings of misconduct that was disclosed by the audits. There was no evidence presented by Plaintiffs that this justification was fabricated or pretextual. COO Long testified that his decision to terminate Rushin's employment was based on the findings of the audits. Director Thomas similarly testified that his decision to terminate Ward-Poag's employment was based on the findings of the WCA audit. While Plaintiffs take issue with how those audits were conducted and ultimately used, they have pointed to no evidence that the decision-makers gave dishonest explanations of their reasons for terminating them. Moreover, Ward-Poag has not shown that she made any disclosures to Director Thomas or that he was aware of her disclosures about Commissioner Arrington. See

*Maine v. Dep't of Corr.*, 355 Ga. App. 707, 712 (2) (b) (845 SE2d 736) (2020) (decision to terminate public employee's employment lacked causal connection to objection protected under GWA). Plaintiffs' failure to rebut the County's direct evidence that they were terminated for legitimate, non-discriminatory reasons is insufficient to create an issue of fact with regard to pretext and is fatal to their claims under GWA. See *Thompson*, 363 Ga. App. at 68 (1). Accordingly, the trial court erred in denying the County's motion for summary judgment.

*Case No. A25A0177*

2. In Case No. A25A0177, Ward-Poag appeals the trial court's January 26, 2024 order granting Fulton County's motion to amend the consolidated pretrial order, removing her claim for damages under the GWA from jury consideration. In light of our holding in Division 1, this appeal is moot and therefore dismissed. See, e.g., *Georgia Power Co. v. Brandreth Farms, LLC*, 364 Ga. App. 816, 824 (3) (875 SE2d 444) (2022).

*Judgment reversed in Case No. A25A0178. Appeal dismissed in Case No. A25A1077. Mercier, C. J., and Dillard, P. J., concur.*